9 A.3d 859

**Rashid A. MOHIUDDIN**

v.

**DOCTORS BILLING & MANAGEMENT
SOLUTIONS, INC., et al.**

**No. 1286, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Nov. 1, 2010.

Reconsideration Denied Jan. 14, 2011.

440

Donald D. Hecht, Baltimore, for appellant.

Susan M. Euteneuer (Ray M. Shepard, Duane Morris LLP, on the brief), Baltimore, for appellee.

Panel: ZARNOCH, GRAEFF and CHARLES E. MOYLAN, JR., (Retired, Specially Assigned), JJ.

MOYLAN, J.

Our initial concern on this appeal is with the granting of a motion to dismiss a complaint on the ground that it fails to state a cause of action. A more intriguing problem is then posed by the procedural sequelae of such an order of dismissal. This appeal arises out of a suit brought by the appellant, Dr. Rashid Mohiuddin, against Doctors Billing and Management Solutions, Inc. (Doctors Billing) and appellee, Physician's

House Calls, Inc. (PHC), in the Circuit Court for Howard County.

## Procedural Background

Seeking to recover unpaid wages and restitution, appellant filed his initial complaint in this case against the defendants on August 21, 2007, in the Circuit Court for Howard County. An amended complaint ("first amended complaint") was filed on December 14, 2007, and another amended complaint ("second amended complaint") on January 14, 2008. That pleading of January 14, 2008, is the one that is important for purposes of this appeal. PHC moved to dismiss the second amended complaint for failure to state a claim. The trial judge granted PHC's motion on February 20, 2008, dismissing the complaint against PHC without prejudice.

As the case against Doctors Billing proceeded, appellant filed another amended complaint ("third amended complaint") on September 24, 2008, renaming PHC as a defendant, and yet another amended complaint ("fourth amended complaint") on December 3, 2008. PHC moved to dismiss the fourth amended complaint for failure to state a claim. Without a hearing, the court granted the motion and dismissed appellant's complaint with prejudice, for failure to amend his previously dismissed complaint within thirty days, as required by Maryland Rule 2–322(c) (2010).

## The Contentions

Appellant timely appealed to this court, and presents the following questions:

1. Did the court err in dismissing appellant's second amended complaint of January 14, 2008 for failure to state a claim?

2. Did the court err in dismissing appellant's fourth amended complaint for failure to amend his complaint in accordance with Rule 2–322(c)?

Because this appeal concerns the granting of motions to dismiss, we will look only to the facts as set forth by appellant

in his second amended complaint. *Schisler v. State,* 177 Md.App. 731, 742–43, 938 A.2d 57 (2007).[1]

This case breaks neatly into two distinct episodes and we think it can be dealt with most intelligibly by considering the episodes one at a time. The first episode concerns substantive law. It ended on February 20, 2008, when the court granted PHC's motion to dismiss the claim against it for failure to state a claim. The second episode, which is the basis for the appellant's second contention, concerns only a procedural question. It only began on February 20, 2008, as the first episode was being concluded. It ended on March 27, 2009, as the court dismissed with prejudice the appellant's fourth amended complaint because it had not been timely filed pursuant to Maryland Rule 2–322(c).

## Round One:

### Factual Background

In May 2006, appellant entered into an employment contract with Doctors Billing, a medical services provider located in Glen Burnie, Maryland, whereby he agreed to provide services as a physician to patients of Doctors Billings in exchange for a salary and benefits. The employment contract was operative from July 1, 2006 to June 30, 2007. The contract contained an exclusivity clause requiring appellant to devote his "entire time and attention to [Doctors Billings'] business," and specifically forbade appellant from "engag[ing] in any other business activity as a physician."

During his year-long employment with Doctors Billing, appellant would, to be sure, occasionally be assigned to see patients of PHC, a separate corporation that provides patients with physicians for home visits. The complaint does not state what payment or reimbursement provisions may have existed

---

1. The court's subsequent ruling was based solely on the timing, rather than the legal sufficiency, of the fourth amended complaint of March 27, 2009. Therefore, the facts pled therein have no bearing on our review of his ruling. Accordingly, the relevant facts for the purpose of this opinion are those pled in the second amended complaint.

between Doctors Billing and PHC. PHC provided appellant with a vehicle for the purpose of treating PHC-patients, and occasionally paid appellant by checks listing appellant as an employee of PHC.

For a 10–week period in the beginning of 2007, appellant was not fully compensated for the work he performed. In an effort to recover his unpaid wages and restitution, appellant filed the instant suit in the Circuit Court for Howard County. His second amended complaint asserted three counts against PHC: (1) violation of Maryland's Wage Payment and Collection Law; (2) *quantum meruit;* and (3) unjust enrichment. PHC responded by moving to dismiss the complaint for failure to state a claim.

### Dismissal of the Second Amended Complaint

Under Maryland Rule 2–322(b)(2), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." On appeal, the reviewing court analyzes a trial court's granting of such a motion *de novo. Monarc Constr., Inc. v. Aris Corp.,* 188 Md.App. 377, 385, 981 A.2d 822 (2009). In this analysis, the reviewing court

> must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.,* the allegations do not state a cause of action for which relief may be granted.

*RRC Northeast, LLC v. BAA Md., Inc.,* 413 Md. 638, 643, 994 A.2d 430 (2010).

A hearing was held on the motion on February 12, 2008. With respect to the Wage Payment and Collection Law claim, the parties focused their argument on the issue of whether appellant was an employee of PHC. The parties also disputed the legal significance of the written contract between appellant and Doctors Billing with regard to the *quantum meruit* and

unjust enrichment counts. After hearing both sides, the court granted PHC's motion because he "didn't believe that there's been a sufficient demonstration of a connection to Physician's House Calls, Inc. to justify leaving them in at this time."

## The Maryland Wage Payment and Collection Law Claim

Title 3, subtitle 5 of the Maryland Code (2008), Labor & Employment Article (LE), otherwise known as the Maryland Wage Payment and Collection Law, provides an employee the right to bring a civil suit against an employer to recover unpaid wages. See LE § 3–507.1(a). An "employer" is defined as "any person who *employs* an individual in the State or a successor of the person," LE § 3–501(b) (emphasis supplied), and "employ" means "to engage an individual to work," including "allowing an individual to work" and "instructing an individual to be present at a work site." LE § 3–101(c). "The decisive test in determining the existence of an employer-employee relationship is the right of the employer to control and direct the employee in the performance of the work and in the manner in which the work is to be done." *Automobile Trade Assoc. v. Harold Folk Enterprises, Inc.,* 301 Md. 642, 660, 484 A.2d 612 (1984) (citing *Mackall v. Zayre Corp.,* 293 Md. 221, 230, 443 A.2d 98 (1982)).

Appellant argues that he alleged sufficient facts in his second amended complaint to raise an inference that PHC was his employer, that is, that PHC had the right to control and direct appellant "in the performance of the work and in the manner in which the work is to be done." In his effort to raise this inference, appellant relies on three allegations set forth in his second amended complaint:

1. While he was under contract with Doctors Billing, appellant "was assigned to see patients through Defendant PHC";

2. PHC "provided [him] with a vehicle so that he may travel to see the patients of Defendant PHC"; and

3. "On several occasions, [he] was paid by paychecks drawn on Defendant PHC's bank account" that listed him as an employee of PHC.

Contrary to appellant's contention, we hold that the above allegations, even if proven, would not be enough to raise an inference that appellant was either engaged to work by PHC, or that PHC exercised any degree of control over appellant in his work as a physician. The first allegation gives no indication as to whether Doctors Billing, PHC, or someone else assigned appellant to see PHC's patients. The second allegation similarly sheds no light on the question of control, but merely explains who owned the vehicle used by appellant while attending to PHC's patients. The last allegation is the only fact asserted in the second amended complaint that, if proven with other facts, could support an inference that appellant was employed by PHC. Standing alone, however, this allegation is not sufficient to raise such an inference and save appellant's Maryland Wage Payment and Collection Law claim.

## The *Quantum Meruit* Claim

█ Two forms of *quantum meruit* claims exist: *quantum meruit* based on an implied-in-fact contract, and *quantum meruit* based on a quasi-contract. *See Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Comm'rs*, 155 Md.App. 415, 482–87, 843 A.2d 252 (2004). Appellant has not stated which theory of recovery he relies on in this case. Since a quasi-contractual *quantum meruit* claim is identical to a charge of unjust enrichment, however, we will assume that appellant's complaint is not redundant and that his *quantum meruit* claim sounds in implied-in-fact contract law. *Id.* at 488–89, 843 A.2d 252.

This Court has explained that implied-in-fact contracts are actual contracts:

An implied-in-fact contract is a "true contract" and "means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words." Implied-in-fact contracts are "dependent on mutual agree-

ment or consent, and on the intention of the parties; and a *meeting of the minds is required.*"

*Mogavero v. Silverstein,* 142 Md.App. 259, 275, 790 A.2d 43 (2002) (emphasis supplied).

Vol. 1, *Williston on Contracts,* § 1.5, pp. 20–21, by Richard A. Lord (1990), also describes an implied-in-fact contract:

The term implied or inferred contract, also sometimes called an implied in fact contract, refers to that class of obligations which arises from *mutual agreement and intent to promise,* when the agreement and promise have simply not been expressed in words. Despite the fact that no words of promise or agreement have been used, such transactions are nevertheless true contracts, and may properly be called inferred contracts or contracts implied in fact.

(Emphasis supplied).

■ In an effort to state a *quantum meruit* claim against PHC, in addition to the alleged facts discussed *supra,* appellant asserted the following:

1. By seeing patients for [PHC], Plaintiff has rendered valuable services to [PHC]. These services were rendered with the intention of receiving wages and/or compensation. [PHC] accepted these services, received the benefit of such services, and knew that Plaintiff expected to be paid for such services.

2. All services rendered by Plaintiff to [PHC] were rendered under such circumstances that [PHC] knew Plaintiff expected to be paid. On several occasions, Plaintiff would ask representatives of [PHC] when he would get his full salary and that he expected to be paid for the services he rendered on behalf of [PHC].

Based on these allegations, we agree with the trial judge that appellant failed to allege sufficient facts for his *quantum meruit* claim to survive PHC's motion to dismiss. Appellant clearly pled that he performed work for PHC for which he expected compensation, and that PHC accepted appellant's services with the knowledge that he expected compensation.

Fatal to appellant's *quantum meruit* claim, however, is the absence of any allegation that either appellant or PHC had agreed that PHC was obligated to pay appellant for his services. Without this critical allegation, to wit, that both parties intended that PHC (rather than Doctors Billing) was required to pay appellant for his services, appellant failed to plead the existence of a mutual agreement between the parties. Because appellant did not allege a meeting of the minds between himself and PHC, his *quantum meruit* claim is legally deficient.

## The Unjust Enrichment Claim

Appellant's final count against PHC was for restitution on a theory of unjust enrichment, a quasi-contractual claim. The *Restatement (Second) of Contracts*, § 4 (1981) describes quasi-contracts:

> Quasi-contracts have often been called implied contracts or contracts implied in law; but, unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. *They are obligations created by law for reasons of justice.*

(Emphasis supplied).

In *Alternatives Unlimited, Inc.*, 155 Md.App. at 496, 843 A.2d 252, this Court recited the three elements that must be established to prevail on a claim of unjust enrichment:

1. A benefit conferred upon the defendant by the plaintiff;
2. An appreciation or knowledge by the defendant of the benefit; and
3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

■ With respect to this count, appellant's second amended complaint alleged that he benefited PHC by serving its patients, and PHC knowingly accepted these benefits without paying him. These allegations clearly satisfy the first and

second element of an unjust enrichment claim. It is with respect to the third element, however, that appellant encounters an insurmountable obstacle. Appellant's second amended complaint alleged:

[PHC's] acceptance, retention and/or use of the services by Plaintiff . . . while [PHC] had knowledge of the services by Plaintiff make it inequitable for [PHC] to retain those benefits without payment of their value."

It is well-established in Maryland that, in order to survive a motion to dismiss, a complaint must plead "the facts comprising the cause of action . . . with sufficient specificity. Bald assertions and conclusory statements by the pleader will not suffice." *Adamson v. Corr. Med. Servs., Inc.,* 359 Md. 238, 245, 753 A.2d 501 (2000). Appellant's allegations in the unjust enrichment count fall well short of this minimum pleading standard. The complaint fails to assert that PHC was enriched as a result of circumstances, such as fraud or misrepresentation, that might make it inequitable for the company to retain the value of appellant's services without paying for them. The second amended complaint left the trial court, and now this Court, guessing why the canons of justice and equity require PHC to pay appellant any amount of compensation. As such, we agree with Judge McCrone and hold that appellant's unjust enrichment claim was properly dismissed.

### Round Two:

### Post–Dismissal Developments

The order of February 20, 2008, granting PHC's motion to dismiss, stated that the case against PHC was "dismissed without prejudice." Shortly before signing the order, the court announced what the order was going to be. It elaborated on possible future developments.

If,—when you do those depositions, something comes to the (inaudible) that would put you in a stronger position with respect to this particular defendant, it's conceivable that you could amend and add some new allegations that would

justify bringing them back in. But at this point in time, I'm going to grant the Motion to Dismiss.

Approximately seven months later, appellant filed another amended complaint renaming PHC as a defendant, and subsequently amended that complaint. In addition to charging the same counts against PHC that were earlier dismissed, appellant also claimed that PHC breached an implied contract. PHC responded by filing a motion to dismiss for failure to state a claim. The judge granted the motion and dismissed the complaint with prejudice, but not on the basis requested by PHC. Rather, the court dismissed the complaint because of appellant's "failure to comply with Maryland Rule 2–322(c) and file an amended complaint within 30 days of the Court's Order dated February 20, 2008." After unsuccessfully requesting the court to alter or amend its judgment, appellant voluntarily dismissed his claim against Doctors Billing without prejudice. This timely appeal followed.

## Procedural Sequelae of a Dismissal

The appellant's second contention is purely procedural. Appellant's fourth amended complaint was dismissed on the ground that it was untimely filed, in violation of Rule 2–322(c). We hold that the lower court's ruling was correct, even if for the wrong reason. In relevant part, Maryland Rule 2–322(c) provides that if a court dismisses a complaint for failure to state a claim

an amended complaint may be filed only if the court expressly grants leave to amend. The *amended complaint shall be filed within 30 days* after entry of the order. . . . *If* leave to amend is granted and *the plaintiff fails to file an amended complaint within the time prescribed, the court,* on motion, *may enter an order dismissing the action.*

(Emphasis supplied).

Appellant's sole argument on this issue is that the thirty-day filing deadline prescribed by Rule 2–322(c) was not applicable in this case because the court order did not "expressly grant leave to amend." The appellant is more right than he may wish to be. The thirty-day time limit on his entitlement

to amend his dismissed pleading is, to be sure, inapplicable. It is inapplicable, however, for the even more foreclosing reason that he has no entitlement to amend at any time, early or late.

When a trial judge grants to a defendant a motion to dismiss the claim pursuant to Rule 2–322, particularly if the motion to dismiss is based on subsection (b)(2), which is the "failure to state a claim upon which relief can be granted," there are two sets of alternate sequelae that may be dealt with in the order of dismissal. Those sets of sequelae are absolutely distinct and do not blur into each other. There is first the question of whether the pleading, following its dismissal, can be amended and thereby revitalized. Even when that is no longer a possibility, there is still the further question of whether a new claim can be filed against the defendant based on essentially the same factual base as the former claim without running afoul of the prohibition of res judicata.

### Filing a New Claim

 The trial court may resolve this second problem—the dichotomy between 1) the option to refile and 2) a prohibition on refiling—by adding to the order either the words "without prejudice" or the words "with prejudice." The words "without prejudice" permit a refiling; the words "with prejudice" prohibit refiling. Generally speaking, a dismissal with prejudice is ordered in cases where the dismissal is based on an appraisal of the legal sufficiency of the claim. It touches the substantive merits of the case. A dismissal without prejudice, on the other hand, is more likely to be ordered in cases where the dismissal is based on some procedural glitch or lapse in the necessary formalities, something that does not engage the merits of res judicata and that can be readily rectified on the next try. What is pertinent to the appellant's plight in this case is that neither phrase has anything to do with whether he may or may not amend his original pleading

### Amending the Old Claim

 The other problem following the dismissal of a pleading—that of whether the pleading may be amended—is

resolved by the trial court either by adding, within the four corners of the order itself, the explicit words "with leave to amend" or by leaving the order silent in that regard. There is no "in-between." Leave to amend is either expressly stated on the face of the order or it does not exist. If the dismissal order expressly grants "leave to amend," there is no final judgment and the case is not closed. At that point, the future of the case is governed by the procedural requirements imposed on the amending process by Rule 2–322. By contrast, unless the case is being kept alive by some other means, such as other parties or other still unresolved claims, a dismissal without the magic words "with leave to amend" closes the case finally and there is, therefore, nothing to amend. The requirement that, to keep the case alive, there must be an express and unqualified grant of leave to amend within the four corners of the dismissal order itself is ironclad.

In *Walser v. Resthaven,* 98 Md.App. 371, 633 A.2d 466 (1993), a motion to dismiss was granted and the aggrieved plaintiffs filed an appeal. The defendant moved to dismiss the appeal on the ground that the trial court's order of dismissal was not yet an appealable final judgment because the plaintiffs had been granted, in the words of the order itself, "30 days ... to file for leave to amend the complaint." The defendant, in arguing against the finality of the judgment, sought to equate the option of filing for leave to amend with the actual grant of leave to amend. This Court, 98 Md.App. at 379, 633 A.2d 466, summarized the issue before us:

> [Defendant's] motion is based on the fact that, in dismissing Counts I through XII, the court stated, in the concluding sentence of its amended order, that "[t]he Plaintiffs shall have *thirty days* from the date of this Order *to file for leave to amend* the Complaint." *Sally treats this statement as though it granted leave to amend,* thereby making the order non-appealable. That is not, however, the case.

(Emphasis supplied).

The opinion of Chief Judge Wilner made forcefully clear how rigidly the courts will construe the notion of an explicit

grant in a dismissal order of "leave to amend." Close does not count.

Why the court included the language that it did is not clear. Perhaps it wanted to see what kind of amended complaint would be offered before deciding whether to allow it. Whatever may have been the court's reason, it is evident that *leave was not expressly given*, and so the amended order entered on January 7, 1992, was final and appealable. The motion to dismiss is denied.

98 Md.App. at 380, 633 A.2d 466 (emphasis supplied).

In Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary* (2d ed. 1992), Rule 2–322, p. 189, the same principle is stated:

The failure to include an express grant of leave to amend leaves the order of dismissal final and appealable.

 The appellant's Panglossian belief that an amendment to his original pleading was among his options is based upon a simplistic conflating of the amendment issue with the refiling issue. The inclusion in the dismissal order of the words "without prejudice" gave the appellant an option of refiling suit. He never did so. That option, however, had nothing to do with the very different entitlement to amend.

In *Moore v. Pomory*, 329 Md. 428, 432, 620 A.2d 323 (1993), Judge Eldridge pointed out the limited utility of the phrase "without prejudice."

*A dismissal of the plaintiff's entire complaint "without prejudice" does not mean that the case is still pending in the trial court and that the plaintiff may amend his complaint or file an amended complaint in the same action. Rather, the case is fully terminated in the trial court. The effect of the designation "without prejudice" is simply that there is no adjudication on the merits and that, therefore, a new suit on the same cause of action is not barred by principles of res judicata.*

(Emphasis supplied).

In that case, the defendants had argued, as the appellant is arguing here, that the dismissal of a complaint "without

prejudice" is the same thing as a dismissal "with leave to amend." The Court of Appeals made it clear, however, that the two phrases are most definitely not synonymous and do not yield the same result.

> It is clear . . . that *an order which* dismisses a complaint, but which *expressly provides leave to amend* the complaint *or to file an amended complaint, is not a final judgment* . . . .
>
> . . . . *Where leave to amend is expressly granted in an order, the case remains pending in the trial court,* whether or not an amended complaint is filed, until another order is entered disposing of the case.
>
> On the other hand, an order dismissing or granting a motion to dismiss a plaintiff's entire complaint, without granting leave to amend, and where there are no counter-claims, cross-claims or third-party claims, puts the plaintiff out of court and terminates the particular action in the trial court. *This is true regardless of whether the dismissal was with prejudice or was without prejudice.*

329 Md. at 431–32, 620 A.2d 323 (emphasis supplied).

The order of dismissal in this case did not expressly grant to the appellant any leave to amend. In dismissing his attempt to do so, the trial court was correct, even if arguably correct for the wrong reason.

In both *Walser v. Resthaven* and *Moore v. Pomory,* to be sure, some of the analysis about the inability of a party to amend a claim if the order of dismissal did not expressly grant leave to amend was based upon the finality of the judgment in those cases at that point. In the present case, by contrast, the continuing pendency of the case against the co-defendant, still awaiting a determination as to damages following the judgment by default as to liability, prevents those cases from applying four square to this one. Even in the event that they might not be dispositive and that the possibility of amending a still pending case availed, such amendment would still be subject to the time restraints of Rule 2–322(c).

Even if, purely *arguendo*, the appellant, therefore, enjoyed the entitlement to amend the pleading, there is no way that the appellant would not have been bound by Rule 2–322(c)'s thirty day filing limitation. The appellant's argument that the thirty-day limitation only applies to those who were "expressly grant[ed] leave to amend" and, therefore, does not apply to him is double-talk. What the appellant is saying, in effect, is, "If I am entitled to amend, I must do so in thirty days, but if I am not entitled to amend, the thirty-day limitation is not addressed to me." He may as well say, "The restrictions that constrain those still living do not apply to those already dead." Without being able to pin a neat Aristotelian label on the flaw, we nonetheless reject the appellant's logic as perspicuously flawed.

Maryland Rules Commentary, *supra*, Rule 2–322, p. 190, is emphatic about the rigidity of the time limitation in the filing of an amended complaint.

> *When the court grants a motion to dismiss with leave to amend*, it should specify in its order granting the motion the time for filing the amended complaint. *In the absence of a time provision in the order, section (c) of this rule provides that the amended complaint must be filed within thirty days* after *entry* of the order, irrespective of when the order was received. . . .
>
> If an amended complaint is not filed within the time allowed by the court or by the rule, an additional order must be entered to effect dismissal of the action. *If the amended complaint is filed late, it is subject to a motion to strike under section (e) of this rule.*

(Emphasis supplied). Whether doomed from the outset or simply untimely filed, the appellant's attempted amendment was properly shot down.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**