*Loren J. Chassels, et al.  v. Benjamin L. Krepps, et al.*
Case No. 954, September Term 2016
Opinion by Nazarian, J.

**HEADNOTES**

SETTLEMENT AGREEMENT – ASSUMPTION OF DUTY – PLEADING

Where a defendant assumed his wife's obligation to maintain an insurance policy she was required by her divorce agreement to maintain, the trial court erred in denying the plaintiff, her ex-husband, an opportunity to amend his complaint to allege that the husband had assumed and breached duties to the plaintiff and his daughter.


UNJUST ENRICHMENT

The trial court erred in dismissing the plaintiff's unjust enrichment claim where the plaintiff alleged that the defendant had allowed a life insurance policy to lapse to avoid incurring the cost of the premiums.

Circuit Court for Frederick County
Case No. 10-C-15-002207

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 954

September Term, 2016

_____

LOREN J. CHASSELS, *et al.*

v.

BENJAMIN L. KREPPS, *et al.*

_____

Woodward, C.J.
Nazarian,
Arthur,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: December 4, 2017

This case presents an obvious wrong that lacks an obvious remedy. There is no dispute that the late Melissa C. Krepps ("Mother") and her husband, Benjamin L. Krepps ("Husband"), failed to maintain a life insurance policy on Mother's life for the benefit of her minor child ("Child"). Mother's divorce and agreement with the child's father, Loren J. Chassels ("Father"), unambiguously required her to do so, and Mother and Husband let the policy lapse before she died. As a result, the $250,000 in policy proceeds that the Child should have collected after her mother's death were not paid.

The question is whether a meaningful remedy lies somewhere, and if so, against whom. Father filed a six-count complaint in the Circuit Court for Frederick County against Mother's Estate and Husband. The circuit court dismissed the complaint with leave to amend Count VI, a claim of unjust enrichment against Husband, but without leave to amend the other claims. After Father amended, Husband moved again to dismiss, and the circuit court granted the motion, this time with prejudice. Father appeals, and we affirm the judgment as to Counts III and IV, reverse as to Counts I, II, V, and VI, and remand, a partial victory that may well prove Pyrrhic.

## I.    BACKGROUND

Father and Mother were married, and Child was born in 2002. At the time of Child's birth, Father and Mother were both practicing doctors. The marriage eventually failed.

Father and Mother divorced on February 21, 2006 and filed a Separation Agreement ("Agreement") with the St. Louis County court in Missouri, where they lived at the time. Father retained physical custody of Child, while Mother, who later married Husband and moved to Virginia, had visitation. As part of the Agreement, Father and Mother each agreed

to maintain a $250,000 life insurance policy for the benefit of Child and list the other parent as trustee beneficiary. The Agreement also provided that if "either party fails to provide life insurance for any reason, his or her estate shall be liable for the amount [of $250,000]." To that end, the Agreement directed that "[e]ach party shall at all times herein provided take whatever action is required to keep his or her insurance policy or policies in full force and effect, and shall furnish proof of such insurance coverage and compliance with the terms herein provided, if requested."

Over the course of the next several years, the relationship between Mother and Father became strained. In 2008, Mother stopped working as a doctor and became a stay-at-home mom for her and Husband's children. Husband became the sole bread-winner and took on the responsibility of paying all of the bills. This arrangement, according to Father, allegedly included the decision to funnel all of Mother's assets and funds into a joint account, then into an account titled only in Husband's name. Father alleges that in the course of marshaling the family assets, Husband contacted Father and left a voicemail confirming that Husband knew about the Agreement's life insurance requirement and other details about child support, and "*that he would do whatever is necessary to make sure the settlement agreement was complied with*." (emphasis added). In that same time frame, Father apparently requested, and received, proof that Mother was maintaining the required life insurance policy for the Child. Mother confirmed that Husband maintained a life insurance policy for Child through his Army benefits, and Father alleged that he received a copy of Husband's paystub showing deductions for the life insurance policy.

2

In January 2013, Mother was diagnosed with a Stage IV melanoma in her brain. That same year, Mother and Husband bought and moved into a house in Maryland titled solely in Husband's name. Also around that time, Husband changed jobs and, because the premiums no longer were deducted from his paycheck at his new job, stopped paying the premiums on the life insurance policy and the policy lapsed. Father had no notice that the premiums weren't being paid or that the policy had lapsed. Mother died in February 2015. A month later, Father contacted Husband about the life insurance policy and learned that the policy had lapsed.

Father filed a complaint ("Complaint"), on behalf of Child, on March 18, 2015. The Complaint named both Husband and the Estate of Melissa C. Krepps (the "Estate") as Defendants,[1] and stated six counts: Count I—Concealment or Non-Disclosure; Count II—Negligent Concealment or Non-Disclosure; Count III—Constructive Fraud; Count IV—Constructive Trust; Count V—Negligence; and Count VI—Unjust Enrichment. Husband filed a motion to dismiss the Complaint in December 2015. After a number of continuances, the circuit court held a hearing, took the motion under advisement, and issued an order on April 13, 2016. The order dismissed Counts I-V, but gave Father leave to amend Count VI. Father amended and re-filed the full six-count Complaint on May 13, 2016. Husband again moved to dismiss, and after a hearing on July 5, 2016, the circuit

---

[1] The Estate was dismissed without prejudice in August 2016 for lack of jurisdiction and apparent lack of service. The Estate also doesn't appear to exist; at least as of the date oral argument, neither Husband nor anyone else had opened an Estate for Mother.

court granted Husband's motion to dismiss on all counts with prejudice. Father filed a timely notice of appeal.

## II.    DISCUSSION

It seemed simple enough on the surface. Mother agreed, as part of the divorce, to maintain a $250,000 life insurance policy on her life, with Child as the beneficiary, to provide for Child in the event of her untimely death. Mother failed to do so, then died. As such, Mother breached the Agreement, and under the terms of the Agreement itself, Father would seem to have a claim (on Child's behalf) in Mother's Estate.

The problem is that there *is* no Estate, or at least not yet. Father's briefs characterize Husband as willfully diverting Mother's assets into his own name before she died, leaving nothing subject to probate and thus no Estate to open, and nothing against which Father and Child can enforce Mother's failure to maintain the insurance policy. Whether Husband's financial actions in the time before Wife's death might amount to some sort of fraudulent conveyance or were otherwise improper is not before us; we don't know, and we don't speculate about, whether there might be some way for Father to open an Estate himself or otherwise create some avenue of recovery against Mother's former assets.

We have before us instead Father's effort to recover from the person to whom he assigns responsibility for the policy's lapse. Stated in non-legal terms, Father blames Husband for failing to pay the premiums and for (mis)leading Father to believe that he and Mother were complying with the Agreement. Father's challenge lies in converting this real-life sense of responsibility into viable claims at law. In two rulings, the circuit court dismissed all of Father's claims, and his four questions on appeal coalesce ultimately into

4

one: did the circuit court err in granting Husband's motions to dismiss with prejudice?[2]

Father contends that the court erred in finding that his complaint, as filed or as amended, did not contain sufficient facts to meet basic pleading requirements or to state a claim. Husband responds that even if the facts contained in the complaint were true, they cannot state a claim upon which relief can be granted because he was neither a party to the separation agreement nor was he enriched by Mother's death.

When reviewing a trial court's decision to grant a motion to dismiss, we determine whether, if true, the allegations in the complaint would "satisfy the elements necessary to obtain the relief sought." *Kaye v. Wilson-Gaskins*, 227 Md. App. 660, 674 (2016). We "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Higginbotham v. Pub. Serv. Comm'n of Maryland*, 171 Md. App. 254, 264 (2006) (cleaned up).[3]

---

[2] In his brief, Father phrased the Questions Presented as follows:

    A.  Whether the trial court was legally correct in dismissing each and every count of the Complaint, and as amended, pleaded in the alternative under Maryland Rule 2-322, for failure to state a claim.

    B.  Whether the Complaint, and as amended, alleged facts that, if true, would justify recovery under any established theory.

    C.  Whether, presuming the truth of all pleaded facts, along with any reasonable inferences derived therefrom, the trial court properly dismissed each and every count.

    D.  Whether the Court, under the liberal amendment rule, abused its discretion in not granting Plaintiff leave to amend Counts 1-V of the Complaint.

[3] "Cleaned up" is a new parenthetical intended to simplify quotations from legal sources. *See* Jack Metzler, *Cleaning Up Quotations*, J. APP. PRAC. & PROCESS (forthcoming 2018), https://perma.cc/JZR7-P85A. Use of "cleaned up" signals that the current author has sought to improve readability by removing extraneous, non-substantive clutter (such

The six counts at issue here fall into three categories—(1) claims that require the plaintiff to allege a duty on the part of the defendant, (2) claims that require the plaintiff and the defendant to be in a special relationship, and (3) unjust enrichment—and we address them in those groupings.

### A. Father Should Have Had An Opportunity To Amend His Complaint To Attempt To Allege A Duty Between Husband And Child.

The *first* group of claims—styled as Count I: Concealment or Non-Disclosure; Count II: Negligent Concealment or Non-Disclosure; and Count V: Negligence—all require Father to establish that the defendant, in this case Husband, owed a duty to the plaintiff, in this case Child. With no Estate to sue, any such duty needs to flow from Husband, in his personal capacity, to Child; none arises directly from their relationship as step-parent and -child or from the Agreement. But under these circumstances, the circuit court cut off prematurely Father's opportunity at least to allege that Husband assumed duties to Child when he took on a direct role in Mother's performance of the Agreement and when he made representations to Father about Mother's ongoing compliance. It's not obvious he can state a claim, but he should at least have had the opportunity to amend his complaint to try, so we vacate the dismissal as to Counts I, II, and V and remand.

To survive a motion to dismiss, all three counts in this group required Father first to allege a duty on Husband's part to do or disclose something, then to connect Husband's failure to do or disclose something to the harm suffered by Child. Count I, Concealment or

---

as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization) without altering the substance of the quotation.

non-disclosure, required Father to allege that Husband (1) "had a duty to disclose something, (2) failed to disclose it, (3) with the intent to deceive, that (4) the failure caused Father to act in justifiable reliance on the failure, and that (5) Child suffered damage as a result. *Blondell v. Littlepage*, 413 Md. 96, 119 (2010).

Father then alleges two flavors of negligence. Negligent concealment, the title of Count II, "has [not] been recognized as a tort in Maryland," *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 550 n.2 (D. Md. 1997), but the allegations in that Count track the elements of negligent misrepresentation,[4] which has, and we'll look to the

---

[4] In his Amended Complaint, Father included the following allegations as part of Count II:

29. [Father] realleges and incorporates all allegations contained in paragraphs 1 through 21 of the complaint, as if fully set forth herein.

30. [Husband] had a duty to disclose, but failed to disclose material facts to [Father].

31. [Mother and Husband], after entering their own agreement for handling their monetary obligations, knew of the lapsing and/or non-coverage of [Child], but decided: (1) not to pay the life insurance premiums, (2) not to keep in force a life insurance policy for the benefit of [Child], and (3) not to warn [Father] of lapsing and non-coverage.

32. Had [Father] known these material facts, [Father] would have acted to protect [Child] by continuing premiums and/or pursuing the obligation on behalf of [Child].

33. [Father] acted in justifiable reliance upon the concealment and non-disclosure.

34. [Father] had suffered loss and damages as a result of these actions to conceal and not disclose material facts.

35. [Father]'s own actions do not constitute contributory negligence.

substance rather than the label. *See Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 900 (4th Cir. 1996). To state a claim for negligent misrepresentation, Father must allege that (1) Husband, "owing a duty of care to [Child], negligently assert[ed] a false statement," (2) Husband intended Father or Child to rely on his statement, (3) Husband knew that they likely would rely and that reliance could result in loss, (4) Father or Child did rely on that statement, and (5) Child suffered injury as a result. *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 226 Md. App. 420, 457–58 (2016), *aff'd*, 451 Md. 600 (2017); *Flaherty v. Weinberg*, 303 Md. 116, 135 (1985). Count V of the Complaint is a straight negligence claim, which generally requires a plaintiff to allege "the existence of four elements: a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat'l Bank*, 307 Md. 527, 531 (1986).

Since Husband is not Child's father or a party to the Agreement, any duty he might have to Child will have to arise elsewhere. Stated most generally, a duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Doe v. Pharmacia & Upjohn Co., Inc.*, 388 Md. 407, 415 (2005) (cleaned up). "Whether a legal duty exists between parties is a question of law to be decided by the court." *100 Investment Ltd. Partnership v. Columbia Town Center Title Co.*, 430 Md. 197, 211 (2013). A duty can arise by statute, by contract, or by operation of a special

---

36. [Father] did not discover the concealment and non-disclosure until after the death of [Mother], who died on February 23, 2015.

8

relationship, *Bobo v. State*, 346 Md. 706, 715 (1997), depending on the policy the duty is meant to serve:

> In determining whether a duty exists, it is important to consider the policy reasons supporting a cause of action in negligence. The purpose is to discourage or encourage specific types of behavior by one party to the benefit of another party. While foreseeability is often considered among the most important of these factors, its existence alone does not suffice to establish a duty under Maryland law.

*Pendleton v. State*, 398 Md. 447, 462 (2007) (cleaned up). A defendant may also "interject [himself]" into a prior agreement, thereby "assum[ing] a duty" through his actions. *UBS Fin. Servs., Inc. v. Thompson*, 217 Md. App. 500, 518, 530 (2015), *aff'd*, *Thompson v. UBS Financial Services, Inc.*, 443 Md. 47 (2015). In *UBS Financial Services*, the Court found that the appellant, Mr. Witherspoon, assumed a duty "to pay insurance premiums and notify the appellees when the premiums went unpaid." *UBS Fin. Servs., Inc.*, 217 Md. App. at 518. Mr. Witherspoon assumed this duty "by taking it upon himself to receive the premium notices and coordinate the payment of the insurance premiums." *Id.* The Court noted that this duty was "limited in nature" and "not fiduciary," unlike the duties that arise from a confidential relationship, because the Court did not want "to expand the concept of fiduciary duty to provide appellees a remedy when a cause of action for negligence [was] available to them." *Id.* Instead, the scope of the duty was a function of the role Mr. Witherspoon assumed in the life of the transactions at issue.

In claims for pure economic loss, a tort duty requires an intimate nexus between the parties. *Jacques*, 307 Md. at 534. That intimate nexus may be satisfied by contractual privity, which we don't have here, or its equivalent, *id.* at 435–35, which can include

9

situations in which: (1) the defendant was aware that his assertions would be used for a particular purpose; (2) the defendant knew that his assertions were intended for a particular party; (3) and the defendant understood that the party would rely on those assertions. *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 617–18 (2017) (citing to *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 674 (2000)). The Court noted in *Balfour* that the key element is "linking conduct—enough to show the defendant knew or should have known of the plaintiff's reliance. This means, of course, that context is critical." *Balfour*, 451 Md. at 620–21.

Husband isn't a party to the Agreement and had no contractual duty to Child. But when Husband took over the family finances, it is possible to imagine, and perhaps to allege, that he created an intimate nexus between himself and Child that gave rise to a duty to keep Father informed about his and Mother's compliance with the Mother's insurance obligation. In the amended complaint, even though he was amending only as to the unjust enrichment claim, Father alleged that Husband contacted him and left a voicemail explaining that "he had discussed the details of child support, medical, educational, and life insurance obligations with [Mother] and that *he would do whatever is necessary to make sure the settlement agreement was complied with*," (emphasis added), and that Mother provided a paycheck receipt showing payroll deductions for the life insurance policy, but then never disclosed Husband's decision to let the policy lapse.

The circuit court dismissed Counts I, II, and V because it could not discern any facts that created a duty outside of a stepparent's "failure to provide for support of a stepchild," a duty that, we agree, is not generally recognized under Maryland law. *See, e.g. Brown v.*

10

*Brown*, 287 Md. 273 (1980). But Father was attempting to assert a different, more situation-specific duty. Husband might not have had a duty to act or speak in the first place, since the core obligations here arose from the Agreement, and thus among Mother and Father and Child. And Husband never actually made a false statement to Father or Child. But once Husband assumed responsibility for complying with the Agreement and represented to Father that he would fulfill that responsibility, he may have assumed a duty at least not to conceal his decision to cease compliance or, by omission or commission, to mislead Father into thinking that he remained in compliance. *See* RESTATEMENT (SECOND) OF TORTS, § 551(2)(c) (including, among circumstances giving rise to liability for nondisclosure, when "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . [and] subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so."). The amendments Father made in support of his unjust enrichment theory (more on that below) demonstrate that the dismissal of Counts I, II, and V without leave to amend was premature, so we vacate the judgment as to those Counts and remand so that Father can amend his complaint, and for further proceedings as appropriate.

**B. There Was No Confidential Relationship.**

Count III, titled Constructive Fraud, and Count IV, Constructive Trust, both depend on the existence of a confidential relationship between the plaintiff and defendant. As to the former, we agree with the circuit court that there was no such relationship; as to the latter, a constructive trust is a remedy, not a claim unto itself.

11

We'll take them in reverse order. A constructive trust is an equitable remedy, not a cause of action in itself. A constructive trust may be imposed by the court where property was acquired through an improper method or a breach of a confidential relationship, *Wimmer v. Wimmer*, 287 Md. 663, 668 (1980), or where there is a "higher equitable call" on that property by the complaining party. *Starleper v. Hamilton*, 106 Md. App. 632, 640 (1995). Whether or not a constructive trust might be an appropriate remedy, there is no standalone cause of action for "constructive trust," and the court was right to dismiss Count IV.

Constructive fraud *is* a cause of action, and requires proof that the defendant breached a legal or equitable duty by deception or by violating a confidence. *Thompson v. UBS Financial Services, Inc.*, 443 Md. 47, 69–70 (2015). The duty generally arises in a context of trust or confidence, such as a fiduciary duty or confidential relationship. *Id.* When such a duty is breached by deceptive conduct, it doesn't matter whether the culpable party had a dishonest purpose or intent to deceive. *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216 (1995). Instead, this breach of duty is "fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Canaj, Inc. v. Baker and Division Phase III, LLC*, 391 Md. 374, 421–22 (2006). Mere non-compliance with a legal duty is not necessarily constructive fraud, though. *Walter E. Heller & Co. v. Kocher*, 262 Md. 471 (1971).

The prerequisite both to a claim for constructive fraud and the imposition of a constructive trust is a "confidential relationship," a relationship in which "dominion or influence [is] exercised by one person over the other." *Midler v. Shapiro*, 33 Md. App. 264

12

(1976). Relationships such as those between an attorney and client or a trustee and beneficiary are presumed to be confidential, *UBS Fin. Servs., Inc. v. Thompson*, 217 Md. App. 500, 517 (2015), likewise, a familial relationship may also give rise to a confidential relationship, but its "mere existence … is not indicative of a confidential relationship." *Orwick v. Moldawer*, 150 Md. App. 528, 538–39 (2003). In familial relationships, the formation of a confidential relationship is "an issue of fact and is not presumed as a matter of law." *Sanders v. Sanders*, 261 Md. 268, 276 (1971). Courts look at whether one party must "necessarily repose trust and confidence in the good faith and integrity of the other," *Orwick*, 150 Md. App. at 536, and "whether a level of trust and confidence exists between two people." *Id.* at 538–39. Confidential relationships must be established by clear and convincing evidence. *Thompson*, 217 Md. App. at 517.

We agree with the circuit court that Father has not alleged facts that demonstrate a confidential relationship between Husband and Child. Unlike the legal duties that Father may have assumed through his actions, a confidential relationship requires, well, a relationship, and even Father characterizes the relationship between Child and Husband as "much forgotten and outside of [Mother and Husband's] immediate concerns." The level of contention and mistrust between Father and Husband belies any notion that Father and Husband had any "level of trust and confidence" between them, *Orwick*, 150 Md. App. at 538–39, let alone that Father would be expected to rely on Husband. Wherever Father and Child's remedies might lie, we agree that they aren't the result of constructive fraud.

### C. Father Stated A Claim For Unjust Enrichment.

13

*Finally*, Father contends that the circuit court erred in dismissing Count VI, his claim for unjust enrichment. And we agree that his amended complaint did state a claim, although the extent to which Husband was, in fact, enriched, and thus the available damages, might well not amount to much.

Unjust enrichment is "an obligation which the law creates in absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it. *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94–95 (2000); *see also Robinette v. Hunsecker*, 212 Md. App. 76, 126 (2013) ("Admittedly, a claim of unjust enrichment, a quasi-contract claim, 'may not be brought where the subject matter of the claim is covered by the express contract between the parties.'") (cleaned up); *accord Pettus v. McDonald*, 343 Ark. 507, 513 (2001) ("[A]n implied-in-law contract is not even a contract at all, but an obligation imposed by law to do justice *even though no promise was ever made or intended.*") (emphasis added) (citing Calamari & Perillo, *Contracts* § 1–12 (3d ed.1987)). Unjust enrichment occurs when the plaintiff confers a benefit on the defendant, the benefit is known to the defendant, and retention of that benefit by the defendant under those circumstances is inequitable. *Mohiuddin v. Doctors Billing & Mgmt. Solutions*, 196 Md. App. 439, 449 (2010). The benefit need not be conferred affirmatively, but may be conferred "by reason of an infringement of another person's interest or of loss suffered by the other." *Berry & Gould P.A. v. Berry*, 360 Md. 142, 151 (2000) (citation omitted). The benefit and the damages must be pled with sufficient specificity, not as bald assertions or conclusory statements.

14

*Mohiuddin*, 196 Md. App. at 450. And "the classic measurement of unjust enrichment damages is the gain to the defendant, not the loss by the plaintiff," *Mogavero v. Silverstein*, 142 Md. App. 259, 276 (2002) (cleaned up), and therein lies the practical rub.

In both his original and amended Complaint, Father alleged that Husband took over responsibility for paying the household bills and maintaining the insurance policy through his Army benefits, through at least July 2013. Father specified the dates on which he received the voicemail from Husband affirming that Husband was handling the life insurance payments, and the copy of Husband's paystub showing Husband's payroll deductions. Husband doesn't dispute that he maintained Mother's life insurance policy while in the Army, or that he stopped making the life insurance premium payments after he left the military. And Father alleges that Husband and Mother stopped paying the policy premiums "in order that they could avoid the expense and keep the money for themselves and their children."

Taking the facts alleged as true, Father has stated a claim for unjust enrichment. *First*, he alleges that Husband took a benefit from Child by pocketing the premium payments. *Second*, he alleges that Husband was aware that keeping the premiums deprived Child of the benefits of the policy. *And third,* he alleges that Husband and Mother took this benefit for an inequitable reason: to keep the money for themselves. This was enough to get past a threshold challenge, and we reverse the circuit court's decision to dismiss the amended complaint as to Count VI. This, though, is where the victory may not be worth a lot: there is no allegation that Husband or Mother (or anyone else) received the benefit that

15

the policy would have paid upon Mother's death, *i.e.*, the policy proceeds. Most likely, Father's recovery in unjust enrichment would take the form of the benefit Husband and Mother did receive, the unpaid policy premiums from the time Husband stopped paying them until Mother's death, although the ultimate answer will await the outcome on remand.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED IN PART, VACATED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE ASSESSED 33% TO APPELLANT AND 67% TO APPELLEE.**