*Curtis Maurice Lopez v. State of Maryland*, No. 11, September Term, 2017. Opinion by Getty, J.

## CRIMINAL PROCEDURE — SENTENCING — VICTIM IMPACT EVIDENCE

A sentencing judge has discretion to admit victim impact evidence in forms beyond victim impact statements and victim impact testimony. However, all victim impact evidence prepared prior to sentencing, which inherently excludes victim impact testimony, is required to meet at least one of the content provisions listed under Md. Code (2001, 2008 Repl. Vol.), Criminal Procedure Article § 11–402(e). The victim impact video prepared in advance of Mr. Lopez's sentencing hearing conveyed the identity of the victims for the sentencing judge. This information is one of the permissible contents pursuant to Criminal Procedure Article § 11–402(e)(1). As such, the sentencing judge did not err or abuse her discretion in admitting the victim impact video.

## CONSTITUTIONAL LAW — EIGHTH AMENDMENT — VICTIM IMPACT EVIDENCE

A noncapital defendant's Eighth Amendment right against cruel and unusual punishment is not violated when victim impact evidence is submitted at sentencing. Specifically, a defendant has no claim under the Eighth Amendment that victim impact evidence injected an arbitrary factor into the sentencing decision when the State does not request the death penalty. As a noncapital defendant, Mr. Lopez's Eighth Amendment right was not violated when the sentencing court admitted and considered the victim impact video at the sentencing proceeding.

## CONSTITUTIONAL LAW — FOURTEENTH AMENDMENT — VICTIM IMPACT EVIDENCE

In applying the test employed by Justice O'Connor in her concurring opinion in *Payne v. Tennessee*, 501 U.S. 808 (1991), for victim impact evidence that is so unduly prejudicial that it violates the Fourteenth Amendment, this Court concludes that the video did not inflame the passions of the sentencing judge more than the facts of the crimes. Therefore, Mr. Lopez's right to due process under the Fourteenth Amendment was not violated when the sentencing judge admitted the video.

Circuit Court for Montgomery County
Case No. 119715
Argued: October 6, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 11

September Term, 2017

---

CURTIS MAURICE LOPEZ

v.

STATE OF MARYLAND

---

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

---

Opinion by Getty, J.

---

Filed: March 29, 2018

"The screen is a magic medium.  It has such power that it can retain interest as it conveys emotions and moods that no other art form can hope to tackle."

Stanley Kubrick (1970).

Does this "magic medium" by its very nature convey such overpowering emotion to warrant a permanent ban from the courtroom?  Does the "magic medium" in the form of a victim impact video with background music constitute "irrelevant information or inflammatory rhetoric" that would "stir strong emotions that might overcome the restraints of reason" of the sentencing judge?  These questions underscore the two opposing interests in this appeal: first, a criminal defendant's interest in a fair sentencing proceeding in which the sentencing judge is not diverted from his or her objective role; and second, a victim's interest in conveying the impacts of the defendant's crimes to the sentencing judge.  This Court is once again called upon to balance these opposing interests in light of the law.  In this instance, this Court must also strike a balance in light of this "magic medium" of technology that has become ever-present in Maryland courtrooms.

In short, we are asked to determine whether victim impact evidence in the form of a video, displaying more than one hundred photographs of the victims, with accompanying music ("the video" or "victim impact video") is impermissible at a sentencing hearing.  Specifically, this Court must decide if such victim impact evidence violates any of the following statutory or constitutional provisions: § 11-402 of the Criminal Procedure Article ("CP") of the Maryland Code, which governs victim impact statements; a defendant's

Eighth Amendment right to be free from cruel and unusual punishment; or a defendant's due process rights under the Fourteenth Amendment.

For the reasons that follow, we first conclude that a sentencing judge has discretion to permit any additional form of victim impact evidence outside the constraints of CP § 11-402, governing written victim impact statements, and CP § 11-403, governing victim impact testimony. We also hold that all prepared victim impact evidence, not including victim impact testimony, must be limited to the content prescribed under CP § 11-402(e), listing the subject matters permitted in victim impact statements. This Court further holds that the Eighth Amendment does not prohibit a sentencing judge from considering victim impact evidence at a defendant's noncapital sentencing proceeding. Lastly, we hold that the defendant's Fourteenth Amendment due process rights were not violated in this case because the disputed victim impact evidence did not inflame the passions of the sentencing judge more than the facts of the crime. Accordingly, we affirm the judgment of the Court of Special Appeals.

## BACKGROUND

A grand jury in the Circuit Court for Montgomery County indicted the Petitioner, Curtis Maurice Lopez ("Mr. Lopez"), with two counts of first degree murder, one count of kidnapping, one count of child kidnapping, and one count of robbery.[1] On January 4, 2013,

---

[1] *See* Md. Code Ann., Crim. Law § 2-201 (Murder in the First Degree); Md. Code Ann., Crim. Law § 3-503 (Child Kidnapping); Md. Code Ann., Crim. Law § 3-502 (Kidnapping); Md. Code Ann., Crim. Law § 3-402 (Robbery).

2

Mr. Lopez entered an *Alford* plea[2] as to both first degree murder counts, the robbery count, and one merged count of child kidnapping. [3] During the plea hearing, the parties presented the court with an agreement that both the State and Mr. Lopez would be free to argue the appropriate sentence at a separate hearing. The State reminded the court that it intended to request a sentence of life imprisonment without the possibility of parole. After accepting the agreement as to sentencing, the circuit court questioned Mr. Lopez about his rights, his understanding of the elements of the charged crimes, and his understanding of the plea. The court found that Mr. Lopez was proceeding by way of an *Alford* plea freely, voluntarily, and intelligently.

In support of the plea, the State presented the following proffer of facts[4] in connection with the murders of Jane McQuain ("Jane") and William McQuain ("William"). Mr. Lopez and Jane were married on April 23, 1988, in a Pennsylvania prison while Mr. Lopez was serving a sentence for attempted murder in a separate case. Though Jane and Mr. Lopez kept in contact and visited occasionally, the two did not live as husband and wife. Jane gave birth to a non-marital son, William, while Mr. Lopez was still serving his sentence in prison. Jane and William lived in Germantown, Maryland, and Jane worked

---

[2] The term "*Alford* plea" comes from the case *North Carolina v. Alford*, 400 U.S. 25 (1970), which upheld a specialized type of plea in which the defendant enters a plea to avoid greater punishment despite continuing to deny his or her guilt.

[3] Count Three for kidnapping in the original indictment was merged into Count Four for child kidnapping for purposes of the plea.

[4] The defense's minor additions are included throughout this summary of the State's proffer.

as a receptionist at an accounting firm in Gaithersburg. When he was released from prison, Mr. Lopez moved to North Carolina.

In September 2011, Jane used inherited money from her deceased uncle to purchase a new car and a flat-screen television. After learning of the inheritance, Mr. Lopez contacted Jane and informed her of his plans to visit on September 16, 2011. Mr. Lopez stayed with Jane and William in their condominium on Briarcliff Terrace during his visit. On Friday, September 30, 2011, Jane took William to his friend's residence for a sleepover. That night, Mr. Lopez bludgeoned Jane with a thirty-pound weight and stabbed her multiple times, leaving her body wrapped in blankets in her condominium. On the morning of Saturday, October 1, 2011, Mr. Lopez used Jane's cell phone to text William that he should come downstairs to be picked up from the sleepover. Mr. Lopez drove William from the sleepover to a storage facility, where Mr. Lopez retrieved a baseball bat among other items. After driving William around for four to five hours, making multiple trips to and from the storage facility, Mr. Lopez proceeded to drive to the woods off of Clarksburg Road. Mr. Lopez then killed William by swinging the baseball bat at William's head at least four times, splitting William's skull into thirty-six pieces. Mr. Lopez then discarded William's body slightly off the road. Mr. Lopez drove Jane's new car back to North Carolina with several of Jane's and William's belongings, including the flat-screen television. Based on this sequence of events, the Montgomery County police obtained an arrest warrant for Mr. Lopez. Police located Mr. Lopez at an Econo Lodge in North Carolina, found Jane's new car parked outside of the Econo Lodge, and retrieved Jane's

4

bank card in the hotel room. After the State's proffer, the circuit court concluded that the State had set forth sufficient facts to sustain a guilty finding as to all counts in the plea.

On June 10, 2013, the court held a sentencing hearing, during which Mr. Lopez requested that the court impose concurrent life sentences, concurrent term-of-year sentences, and the possibility of parole. Preliminarily, Mr. Lopez moved to exclude a video with photographs of the two victims set to background music, which the victims' representative, Mr. William McQuain ("Mr. McQuain"), Jane's brother, intended to play at sentencing. Mr. Lopez contended that the video did not constitute permissible victim impact evidence and violated Mr. Lopez's constitutional rights. The defense also argued that another judge should conduct an *in camera* review of the video to determine whether it should be excluded or redacted. The State countered that the sentencing judge has discretion to allow victim impact evidence, and that all judges are able to rule on evidentiary matters and proceed to consider only the permitted evidence. Counsel for Mr. McQuain argued that the video was completely appropriate for sentencing because it showed the identity and characteristics of the victims. Ultimately, the sentencing judge denied Mr. Lopez's request for another judge to conduct an *in camera* review as well as his motion to exclude the video. The sentencing judge concluded:

> I have discretion to allow whatever I like or whatever is appropriate in this kind of sentencing proceeding. I'm told that it is just pictures, that it is six minutes. This is their one -- the victims' family's one opportunity to show me, or anyone else, the extent of the impact upon them. And so I know you don't like it but this is what they would like to do and in some respects it would be cathartic to, for the last time, be able to fully discuss their sister and their nephew. So I'm going to allow the video to be played.

5

The State summarized the facts of the crime, showed a PowerPoint depicting pictures of the crime scenes, submitted written victim impact statements, and presented nine witnesses who gave victim impact testimony. Mr. McQuain, the victims' representative, testified about his sister, Jane, and his nephew, William, as well as the struggles he faces as a result of the death of his family members. At the end of his testimony, Mr. McQuain requested that he be able to play the video of photographs of the two victims. The video begins with the title, "The Story of Jane and William," which appears on the screen while church bells are playing in the background. The video footage then displays childhood photographs of Jane set to the song "Sort of (Instrumental)" by Ingrid Michaelson, which is fittingly characterized as instrumental music. As the song slows down, photographs of Jane during her adult life are shown while the angle zooms in on Jane's image. After approximately one minute, the video displays photographs of Jane holding William as a baby while the instrumental music continues. The video then depicts two-and-one-half minutes of photographs of Jane and William spending time together as well as photos of William engaging in childhood activities, during which the same instrumental music plays in the background. When the first song ends, the song "Yeah, Yeah" by Sam Means plays for approximately two minutes of additional family photos and childhood photographs of William. The last photograph of Jane and William embracing is shown for approximately twenty seconds while the sound of church bells again plays in the background. The video then shows a list of credits for people who shared photographs, the music, and the video production. The credits are set to the sound of the first song, "Sort of (Instrumental)" by Ingrid Michaelson. The footage ends with a graphic displaying the

6

words "All Memories By Jane & William" as the instrumental music fades out. The video lasts a total of six minutes and twelve seconds, contains approximately 115 photographs, and includes two songs along with the sound of church bells.

After the video was played, defense counsel moved to have the sentencing judge recused because of the video's prejudicial nature. Specifically, counsel for Mr. Lopez stated:

> Your Honor, we've [] previously objected to this video being shown. Certainly the State has a right to put on its presentation, but this is so unduly prejudicial [] in this matter, that Your Honor we would ask the [c]ourt to possibly recuse[.] I mean, this obviously just appeals to emotions, which something like this goes [to], but this is just, this is over the top.

The sentencing judge denied the motion to recuse, concluding that the victims' representative was entitled to show photographs. The defense then requested that the court make a copy of the video for the appellate record, which the sentencing judge granted.

At the conclusion of the hearing, the sentencing judge gave her oral ruling:

> There's not much more I can say other than the eloquent words we have heard from all of the victims here today and in their victim impact statements, which were submitted to the [c]ourt last week.

> * * *

> [T]he monstrous nature of this crime cannot convert this case into concurrent time or any prospect of parole. You stabbed Jane McQuain and crushed her skull with a 30-pound dumbbell. You took William from a sleepover, got a baseball bat out, took him into the woods, and crushed his skull into many pieces, and this was a person who called you "Dad."

> * * *

7

Frankly, it is too bad the death penalty is no longer available, as the circumstances of this case and your criminal history truly would warrant that penalty.

Ultimately, the court sentenced Mr. Lopez to life imprisonment without the possibility of parole for the first degree murder of Jane, a consecutive term of life imprisonment without the possibility of parole for the first degree murder of William, a consecutive term of thirty years for child kidnapping, and a concurrent term of twelve years for robbery.

Mr. Lopez filed an application for leave to appeal on July 9, 2013, asserting that the video was inadmissible at sentencing.[5]  The Court of Special Appeals granted the leave to appeal on December 22, 2014.  In a reported opinion filed on February 2, 2017, the Court of Special Appeals affirmed the judgment of the sentencing judge, holding that the court did not abuse its discretion in admitting the video at sentencing and the video did not violate Mr. Lopez's constitutional rights.[6]  *Lopez v. State*, 231 Md. App. 457, 489 (2017).  Mr. Lopez filed a petition for writ of certiorari in this Court on March 10, 2017, which this Court granted on May 9, 2017.  *Lopez v. State*, 453 Md. 8 (2017).  Mr. Lopez presents one question for our review,[7] which we have rephrased as follows: Did the sentencing court err

---

[5] Mr. Lopez also contended that the State violated pre-sentencing discovery by failing to provide the defense with a specific statement of what information it intended to present at the sentencing hearing.  Mr. Lopez did not assert this argument in his petition for writ of certiorari; therefore, this issue is not before this Court.

[6] The Court of Special Appeals also held that the State's notice to Mr. Lopez did not meet the requirements of Md. Rule 4-342(d), but such failure did not unfairly prejudice Mr. Lopez at sentencing.  This issue is not before this Court.  *See supra* note 5.

[7] In his petition for writ of certiorari, Mr. Lopez phrased the question presented as follows:

when it permitted the victims' representative to play a video of photographs depicting the lives of the victims with accompanying music at sentencing because the video: (A) constituted improper victim impact evidence in violation of CP § 11-402; (B) violated Mr. Lopez's Eighth Amendment right to be free from cruel and unusual punishment; or (C) violated Mr. Lopez's due process rights under the Fourteenth Amendment?

## DISCUSSION

The State of Maryland has expressed a clear public policy throughout the last thirty-five years to provide broad rights to crime victims. In 1982, the Maryland General Assembly enacted the primary statute in pursuit of that public policy goal: Maryland's first victim impact evidence statute. 1982 Md. Laws, ch. 494. This victim impact legislation required a presentence investigation report to include a victim impact statement if the defendant committed certain crimes that caused injuries to a victim. *Id.* The original statute also allowed the State's Attorney to submit a victim impact statement in the event a presentence investigation was not requested. *Id.* The sponsor of this legislation, Senator John J. Garrity, stated that the purpose of the statute was to "provide[] the mechanism to place at the judge's disposal all the facts regarding impact of the crime on the victim." *Reid v. State*, 302 Md. 811, 816 (1985). This Court emphasized that "the intent of [the original victim impact evidence statute] was to provide the victim access to the sentencing process

---

Is a music video/slide show depicting the lives of the victims a permissible form of victim impact evidence, and does its admission violate a criminal defendant's rights under the Eighth and Fourteenth Amendments to the United States Constitution?

9

by ensuring that at least in one way the effects of the crime on the victim will be presented to and considered by the sentencing judge." *Id.* at 816–17.

In order to provide victims with the right to present their viewpoint in all cases, the General Assembly enacted Senate Bill 132 the following year, requiring the sentencing court to consider a presentence investigation report with victim impact statements in death penalty cases. 1983 Md. Laws, ch. 297. "It is apparent that the legislature intended that victim impact statements be admissible in capital case sentencing proceedings." *Lodowski v. State*, 302 Md. 691, 738–39 (1985), *vacated on other grounds*, 475 U.S. 1078 (1986). In 1986, Maryland enacted victim impact testimony legislation, seeking to expand the ways in which victims could present evidence at sentencing proceedings by allowing victims, a member of the victim's immediate family, or a victim's representative to address the sentencing court, as long as permitted by the sentencing judge. 1986 Md. Laws, ch. 127.

In addition to the growing statutory recognition, Maryland afforded victims constitutional protection when the Maryland General Assembly passed and the people ratified Article 47 of the Maryland Declaration of Rights. 1994 Md. Laws, ch. 102. The constitutional right for victims specifically provides:

(a) A victim of crime shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process.

(b) In a case originating by indictment or information filed in a circuit court, a victim of crime shall have the right to be informed of the rights established in this Article and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms "crime", "criminal justice proceeding", and "victim" are specified by law.

Md. Const. Decl. of Rts. Art. 47. In discussing the constitutional provision, this Court described "Article 47 [as] 'the strong public policy that victims should have more rights and should be informed of the proceedings, that they should be treated fairly, and in certain cases, that they should be heard.'" *Hoile v. State*, 404 Md. 591, 605 (2008) (citing *Lopez–Sanchez v. State,* 388 Md. 214, 229 (2005)). "The mandate of the people is clear. In response to that mandate, trial judges *must* give appropriate consideration to the impact of crime upon the victims." *Cianos v. State*, 338 Md. 406, 413 (1995).

Following the ratification of the victims' constitutional right, the General Assembly enacted the Victims' Rights Act of 1997. 1997 Md. Laws, ch. 311. The overall purposes of the Victims' Rights Act of 1997 were to "expand[] victims' rights laws to include juvenile proceedings," to require enhanced notifications to victims "relating to parole and mandatory supervision," as well as to allow victims "to request that offenders be prohibited from having contact with the victim as a condition of release or supervision." Dep't Legis. Servs., *Fiscal and Policy Note, Senate Bill 173*, at 1 (1997 Session).[8] The trend of expanding victims' rights continued as recently as 2015 when the legislature enacted "Alex's Law." 2014 Md. Laws, ch. 151.[9] Specifically, Alex's Law requires sentencing

[8]http://mgaleg.maryland.gov/1997rs/fnotes/bil_0003/sb0173.PDF [https://perma.cc/2FS6-RBXX].

[9] This piece of legislation, which was first introduced to the Maryland General Assembly in 2013 as House Bill 1382, was enacted with the name "Alex's Law" after a young man who was severely injured in a traffic accident. After speeding and running a red light, a driver crashed into Alex's car, causing Alex serious body and brain damage; thus, Alex was unable to speak for himself as a victim. Alex's mother was responsible for caring for Alex after the car crash. However, Alex eventually passed away as a result of his injuries.

11

courts to hear from a victim or the victim's representative before imposing a sentence, unless deemed impracticable, even in cases in which the prosecuting attorney does not request that the court consider such testimony. *See* Dep't Legis. Servs., *Fiscal and Policy Note, Senate Bill 272*, at 1 (2014 Session).[10] These statutes, as well as Article 47 of the Maryland Declaration of Rights, demonstrate the State's desire to implement broad victims' rights in criminal proceedings, including sentencing.

However, the legislature and this Court have also made clear that victims' rights are not without limitation. In fact, the original victim impact evidence statute in Maryland included a list of the acceptable content in a victim impact statement. *See* 1982 Md. Laws, ch. 494. Specifically, the original bill prescribed:

> (3) A victim impact statement shall:
>
> (i)  identify the victim of the offense;
> (ii)  itemize any economic loss suffered by the victim as a result of the offense;
> (iii)  identify any physical injury suffered by the victim as a result of the offense along with its seriousness and permanence;

---

Alex's mother appeared before the district court for the driver's disposition hearing. Alex's mother asked the court if she could read a victim impact statement; however, the district court judge denied her request. In response to the events involving Alex and his mother, as well as similar experiences statewide, the Maryland General Assembly enacted Alex's Law to require courts, if practicable, to consider a request from victims or a victim's representative to address the court before the imposition of a sentence. *See* Hearing on House Bill 1382 Before the Judiciary Comm. of the H.D., 2013 Leg., 438th Sess. (Md. 2013) (verbal testimony of Del. Michael A. McDermott) http://mgaleg.maryland.gov/webmga/frmMain.aspx?id=hb1382&stab=01&pid=billpage &tab=subject3&ys=2013rs [https://perma.cc/BA4R-UYY7].

[10] http://mgaleg.maryland.gov/2014RS/fnotes/bil_0002/sb0272.pdf [https://perma.cc/U6B Z-RRUU].

(iv)  describe any change in the victim's personal welfare or familial relationships as a result of the offense;

(v)  identify any request for psychological services initiated by the victim or the victim's family as a result of the offense; and

(vi) contain any other information related to the impact of the offense upon the victim that the court requires.

1982 Md. Laws, ch. 494.[11]  Therefore, the very first Maryland statute recognizing the importance of victim impact evidence also demonstrated the legislature's intent to confine the victim impact statements to relevant information for purposes of sentencing.

Parallel to the boundaries placed by legislation, the Maryland courts also placed proper limitations on victim impact evidence.  This Court aptly explained that "Article 47 and related legislation have created a class of specific, *but narrow*, rights for victims with regard to certain aspects of the criminal proceedings against the perpetrators of the crimes committed against victims or their property."  *Hoile*, 404 Md. at 605 (emphasis added). We have repeatedly "taken cognizance of the legislative dictate that victim impact evidence is admissible in certain cases," *Lodowski*, 302 Md. at 749, while also declaring that the victims' rights, "however, are limited in application and context."  *Hoile*, 404 Md. at 606. These "limits of victims' rights have been defined further in Maryland caselaw."  *Id.* at 607.  For example, this Court previously held in *Cianos v. State* that victims were not entitled to file an appeal after the trial judge asked the victims to refrain from addressing the court, to which the victims agreed.  338 Md. 406, 410 (1995).  In fact, the *Cianos* Court

---

[11] This statute was subsequently repealed and replaced by 2001 Md. Law, ch. 10 without substantive changes and is now codified at CP § 11-402.

explained that any appeal taken "by a victim is collateral to and may not interrupt a criminal case, and such an appeal cannot result in a reversal of the judgment and a reopening of the case." *Id.* at 411. As such, this Court has continuously balanced the legislature's public policy mandate of affording victims broad rights against the need for appropriate limitations.

This Court is now tasked with reviewing a sentencing proceeding and determining whether the victims' rights were appropriately granted pursuant to the legislative mandate or whether certain limitations as to "application and context" were necessary. *Hoile*, 404 Md. at 606. Generally, we review sentences only to determine whether the sentence is within statutory limitations, whether the sentencing judge was "motivated by ill-will, prejudice[,] or other impermissible considerations," whether the sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment, and whether the sentence violates any other constitutional provisions. *Gary v. State*, 341 Md. 513, 516 (1996). In this appeal, Mr. Lopez requests that this Court vacate his sentence due to each of these alleged violations.

Mr. Lopez first urges this Court to hold that all prepared victim impact evidence is confined to the permissible content for victim impact statements listed under CP § 11-402(e). Failing to do so, Mr. Lopez asserts, will result in a statutory violation as well as an "impermissible consideration[]." *Sharp v. State*, 446 Md. 669, 686 (2016). In addition to this combined statutory and impermissible motivation argument, Mr. Lopez contends that admitting the video violated his Eighth Amendment right to be free from cruel and unusual punishment. *See Booth v. Maryland*, 482 U.S. 496, 509 (1987), *overruled by Payne v.*

14

*Tennessee*, 501 U.S. 808 (1991). Lastly, Mr. Lopez contends that the video played at sentencing violated his due process rights under the Fourteenth Amendment.

## A. *Permissible Victim Impact Evidence*

A sentencing judge "'is vested with virtually boundless discretion' in devising an appropriate sentence." *Cruz-Quintanilla v. State*, 455 Md. 35, 40 (2017) (quoting *Smith v. State*, 308 Md. 162, 166 (1986)). However, a judge's decision to admit certain victim impact evidence during a sentencing hearing is more akin to a trial court's ruling on the admissibility of evidence. Typically a trial judge's decision to admit certain evidence is reviewed for abuse of discretion. *Gordon v. State*, 431 Md. 527, 533 (2013). When the evidentiary determination also involves a question of law, such as whether the evidence is relevant or constitutes hearsay under Maryland statutes, that legal issue is reviewed *de novo*. *Id.* In *Ball v. State*, this Court previously applied these standards of review to a sentencing judge's decision to admit victim impact evidence. 347 Md. 156, 197 (1997). Specifically, we stated that "the permissible scope of victim impact testimony instead lies within the sound discretion of the presiding judge, *as limited by* Md. Code (1957, 1996 Repl. Vol.), Art. 27, § 413(c)(1)(v) [the former victim impact evidence statutes]." *Id.* at 197 (emphasis added). Therefore, a sentencing judge will abuse his or her discretion by admitting victim impact evidence when the decision to admit such evidence is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *Sumpter v. Sumpter*, 436 Md. 74, 85 (2013) (quoting *North v. North*, 102 Md. App. 1, 14 (1994)). In addition,

15

a sentencing judge will err as a matter of law when he or she admits victim impact evidence that violates any of the victim impact statutes: CP §§ 11-402 & 11-403. *See id.*

The Maryland victim impact statutes, codified at CP §§ 11-402 and 11-403, discuss two types of victim impact evidence: victim impact statements and victim impact testimony. The former requires the court to "consider the victim impact statement in determining the appropriate sentence[.]" CP § 11-402(d). The latter statute mandates that the sentencing judge, "if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of sentence or other disposition[.]" CP § 11-403(b). Neither provision of the Maryland Code governs additional forms of victim impact evidence, such as the video disputed in this appeal. However, Mr. Lopez asks this Court to apply the requirements listed under CP § 11-402(e) to the victim impact video submitted at the sentencing. This section of the statute reads:

[a] victim impact statement for a crime or delinquent act shall:

(1) identify the victim;
(2) itemize any economic loss suffered by the victim;
(3) identify any physical injury suffered by the victim and describe the seriousness and any permanent effects of the injury;
(4) describe any change in the victim's personal welfare or familial relationships;
(5) identify any request for psychological services initiated by the victim or the victim's family;
(6) identify any request by the victim to prohibit the defendant or child respondent from having contact with the victim as a condition of probation, parole, mandatory supervision, work release, or any other judicial or administrative release of the defendant or child respondent, including a request for electronic monitoring or electronic monitoring with victim stay-away alert technology; and

16

> (7) contain any other information related to the impact on the victim or the victim's family that the court requires.

CP § 11-402(e). Mr. Lopez contends that the victim impact video is more comparable to victim impact statements than oral victim impact testimony. For justification, Mr. Lopez asserts that applying the restrictions listed under CP § 11-402(e) to all prepared victim impact evidence would prevent the sentencing judge from impermissibly considering irrelevant content when imposing a sentence.

In contrast, the State asserts that the video was properly considered during the sentencing hearing because only victim impact statements and victim impact testimony are limited by §§ 11-402 and 11-403 of the Criminal Procedure Article; any victim impact evidence outside of those statutes lies within the sound discretion of the sentencing judge. The State suggests that the sentencing judge did not abuse her discretion because the video depicts the true impact of the crime on the family. In a similar vein, the victims' representative contends that the video was properly admitted as part of the victim impact testimony. The victims' representative points out that Maryland jurisprudence does not apply the limitations under CP § 11-402(e) to the victims' rights to be heard at sentencing. Therefore, the victims' representative urges this Court to find that the sentencing judge did not abuse her broad discretion in permitting the video as part of the victim impact testimony.

Maryland appellate courts have not yet addressed the specific issue of whether victim impact evidence outside of a victim impact statement or victim impact testimony should be limited in content or form. However, there are Maryland cases instructive to this

17

question. In 1985, this Court reviewed a sentencing hearing in which the court sentenced the defendant, Gregory Reid, to life imprisonment for first degree rape with a consecutive twenty-year sentence for first degree sexual offense and a ten-year consecutive sentence for robbery. *Reid*, 302 Md. at 814. In *Reid*, we considered whether the State was permitted to submit a second victim impact statement in addition to the victim impact statement included in the presentence investigation. *Id.* at 815. Reid argued that this second victim impact statement constituted a violation of the former victim impact statute and constituted an impermissible consideration at the sentencing hearing. *Id.* The victim impact statute at that time included a subsection mandating, "[i]f the court does not order a presentence investigation, the State's Attorney may prepare a victim impact statement to be submitted to the court and the defendant." 1982 Md. Law, Ch. 494.[12] Reid argued that the additional victim impact statement violated the statute because the State's Attorney may only submit a statement if a presentence investigation is specifically not ordered. *Reid*, 302 Md. at 815–16. The State argued that the victim impact statement submitted separately from the presentence investigation "was merely additional information [that] should be left to the sentencing judge's discretion whether to consider [because the statute] does not limit the

---

[12] Then codified at Md. Code Ann., Art. 41 § 124. The current CP § 11-402 includes similar language: "If the court does not order a presentence investigation or predisposition investigation, the prosecuting attorney or the victim may prepare a victim impact statement to be submitted to the court and the defendant or child respondent in accordance with the Maryland Rules."

extent of the court's inquiry but rather ensures that at least a minimum of information on victim impact is provided and will be considered by the court at sentencing." *Id.* at 815.

In response, this Court first determined that the "legislative history suggests an intent to establish minimum standards for the information to be provided to judges and to make this information available in as many cases as fiscal constraints allowed." *Id.* at 818. The *Reid* Court then concluded that any suggestion that the victim impact statute limits the victim from submitting more than one victim impact statement "runs contrary to the broad discretion placed in the sentencing judge long recognized by this Court. This Court has in the past refrained from placing restrictions on the sentencing judge's discretion as to information that may be considered." *Id.* at 819 (citations omitted). Specifically, we held:

> The proper interpretation then of Art. 41, § 124(c) is that it sets a minimum standard for what the sentencing judge in a circuit court must consider as far as the effects of the crime on the victim. Section 124(c) does not prevent additional statements or comments from being offered whether by the victim, his family or the State's Attorney. *The only difference between the presentence investigation's Victim Impact Statement and any additional statements offered is that with regard to the latter it is within the judge's discretion whether to consider them at sentencing.*

*Id.* at 821 (emphasis added). With this language, this Court acknowledged that the victim impact statutes do not limit the sentencing court from considering additional victim impact evidence. *Id.* Our opinion in *Reid*, therefore, affirms that any victim impact evidence beyond the minimum required by statute is within the sentencing judge's discretion to consider. *Id.*

Similarly, in *Whittlesey v. State*, the petitioning defendant contended that showing a ninety-second videotape of the victim playing the piano to the sentencing jury was impermissible as cumulative evidence. 340 Md. 30 (1995). This Court upheld the trial court's determination that the videotape was not cumulative victim impact evidence because the video provided the sentencing jury with information about the victim that was not provided through testimony. *Id.* at 87. Specifically, the sentencing court concluded that the video was relevant because it portrayed the victim's nationally recognized talent of playing the piano better than any photograph and displayed the victim's appearance at the time of his death. *Id.* Upon review of the sentencing judge's decision to admit the video, this Court found the sentencing court did not abuse its discretion by concluding the video was relevant. *Id.* Specifically, Judge Irma S. Raker, writing for the majority, stated, "[a]ppellant concedes that such victim impact evidence is admissible under § 413. Appellant also concedes that this evidence is not prohibited by the United States Constitution. Appellant also does not contend that the videotape was 'unduly inflammatory,' the limit we have placed on the admissibility of victim impact evidence." *Id.* at 86–87 (citing *Evans v. State,* 333 Md. 660, 688 (1994)). In his concurrence and dissent, Judge Robert M. Bell warned against the tendencies of certain types of victim impact evidence:

> It is now a well established principle of law that the introduction of victim impact evidence is constitutionally permissible, and includes any evidence which the court deems probative and relevant to sentencing. Nevertheless, such evidence is dangerous because of its tendency to act as a super-aggravating factor. I believe, therefore, that great care must be taken to insure that such evidence does not have that effect; it should not be

20

characterized, or be used in such a way as to trump any mitigating circumstance proven by the appellant. It ought not, in other words, be the decisive factor in determining an accused's fate.

*Id.* at 112 (Bell, J., concurring and dissenting) (citations omitted). As such, Judge Bell recognized that victim impact evidence can extend to any form that is probative and relevant, but cautioned future courts that victim impact evidence should not "be the decisive factor in determining" a sentence. *Id.* (Bell, J., concurring and dissenting).

A few years later in *Ball v. State*, this Court considered whether a sentencing judge properly considered certain victim impact testimony during a capital sentencing hearing. 347 Md. at 192–96. On appeal, the defendant asserted that victim impact testimony about the harm to individuals outside of the family was improper, citing to the content requirements under the former victim impact statement statute. *Id.* at 196. This Court rejected that argument by noting that the statute "pertains only to written victim impact statements" and "does not, by its express terms, extend to oral victim impact testimony[.]" *Id.* at 197. In distinguishing victim impact statements from victim impact testimony, the *Ball* Court explained that:

> [I]t would be difficult to conform oral testimony to the requirements of this statute. Because written victim impact statements are prepared and reviewed prior to the commencement of the sentencing proceeding, their content can be effectively delineated by statute. Oral victim impact testimony, in contrast, cannot be controlled with such precision. Victim impact witnesses testify under great emotional strain and, in venting their pain and frustration, may make an occasional reference to the impact of the crime on individuals beyond the victim's family.

*Id.* After analyzing the inherent differences between victim impact statements and victim impact testimony, this Court reasoned that the permissible content list under § 11-402(e) "may provide guidance as to appropriate matters for victim impact witnesses to address orally at sentencing, [but] it should not be viewed as establishing the outer limits of that testimony such that any deviation warrants automatic reversal of the sentence imposed." *Id.* It is evident, therefore, that this Court previously considered that the statutory content requirements for victim impact statements serve as guidance for other types of victim impact evidence, but do not constitute strict limitations on such evidence.

Overall, these precedents establish three guiding principles for purposes of victim impact evidence in Maryland. First, any victim impact evidence not strictly permitted by statute is within the sentencing judge's discretion to consider. *See Reid*, 302 Md. at 821. Moreover, videos can be relevant and probative at a sentencing hearing for purposes such as showing the personal characteristics and unique identity of the victim. *See Whitlessey*, 340 Md. at 86–87. Finally, this Court acknowledged that there can and should be limitations on victim impact evidence, especially when that evidence is "prepared and reviewed" before the sentencing hearing. *See Ball*, 347 Md. at 197. Given that these Maryland cases provided no instruction as to what specific limitations should apply to discretionary victim impact evidence, Mr. Lopez implores this Court to take note of other jurisdictions that considered similar questions regarding victim impact evidence at sentencing.

The federal and state cases cited by Mr. Lopez address significant questions related to victim impact evidence; however, none of the cases analyzed the first issue in this appeal.

Several of the cases cited by Mr. Lopez analyzed whether a victim impact video should be excluded at a sentencing hearing because such evidence is more prejudicial than probative. *See, e.g., United States v. Sampson*, 335 F. Supp. 2d 166, 187 (D. Mass. 2004); *Salazar v. State*, 90 S.W.3d 330, 331–36 (Tex. Crim. App. 2002). Other jurisdictions addressed whether a victim impact video played at sentencing violates a defendant's constitutional rights and whether counsel's failure to object to such a video constitutes ineffective assistance of counsel. *See, e.g., State v. Hess*, 23 A.3d 373, 392–94 (N.J. 2011); *People v. Prince*, 156 P.3d 1015, 1091–94 (Cal. 2007). Though the Court of Special Appeals relied on *State v. Leon* as persuasive authority on whether a video is permissible at a sentencing hearing, the Court of Appeals of Idaho analyzed a slightly different question. 132 P.3d 462, 462–67 (Idaho Ct. App. 2006). Namely, the *Leon* Court determined that a victim impact video montage of photographs set to music was a permissible form of the victim's right "to be 'heard'" as permitted by Idaho's statute and Constitution. *Leon*, 132 P.3d at 465. In this appeal, we must decide whether victim impact evidence should be limited in content and whether the video in this case conveyed appropriate content for purposes of the sentencing judge's decision. Therefore, this Court will not exclusively rely on the analysis of any of the federal or sister state cases.

In addition to varying questions presented, these federal cases are also distinct in another significant way: the sentencing bodies considering the victim impact evidence consisted of sentencing juries rather than sentencing judges. *See, e.g.*, *Salazar*, 90 S.W.3d at 331–36; *Sampson*, 335 F. Supp. 2d at 187; *Prince*, 156 P.3d at 1091–94. *But see Leon*, 132 P.3d at 462–67. In *Leon*, the Court of Appeals of Idaho specifically stressed the fact

23

that when a sentencing body consists of a judge, the sentencing judge is "presumably able to ascertain the relevancy and reliability of the broad range of information and material which may be presented to it during the sentencing process and to disregard the irrelevant and unreliable." 132 P.3d at 466 (quoting *State v. Johnson,* 618 P.2d 759, 761 (1980)). Similarly, Maryland Courts have also stressed that we have "confidence in a trial judge's ability to rule on questions of admissibility of evidence and to then assume the role of trier of fact without having carried over to [the judge's] factual deliberations a prejudice on the matters contained in the evidence which [the judge] may have excluded." *Ball*, 347 Md. at 194 (quoting *State v. Hutchinson,* 260 Md. 227, 236 (1970)). This Court has equal confidence that a sentencing judge has the experience and ability to analyze the evidence, consider its permissibility, as well as place the appropriate weight on the evidence. Therefore, the federal cases cited by Mr. Lopez can also be distinguished from the case *sub judice* in that the victim impact evidence was presented to an experienced judge, not an inexperienced jury.

Because the federal and sister state cases cited by Mr. Lopez cannot serve as guidance for our decision here, this Court must thoroughly analyze our leading precedent. In *Ball*, this Court reasoned that the content requirements for victim impact statements, as enumerated by CP § 11-402(e), could serve as guidance for victim impact evidence. 347 Md. at 197. Specifically, we stated that "it would be difficult to conform oral testimony to the requirements of this statute. Because written victim impact statements are prepared and reviewed prior to the commencement of the sentencing proceeding, their content can be effectively delineated by statute." *Id.* These content restrictions should not be applied

24

to victim impact testimony because witnesses "testify under great emotional strain" and "cannot be controlled with such precision." *Id.* Therefore, in *Ball*, this Court recognized that content restrictions are proper for any victim impact evidence that is prepared before the sentencing hearing. *Id.* Therefore, this Court is persuaded that the sentencing judge ultimately has discretion to admit any form of victim impact evidence, including videos. *See, e.g.*, *Reid*, 302 Md. at 821; *Whitlessey*, 340 Md. at 86–87. However, we are cognizant that this jurisprudence also demonstrates a need for some type of limitation on prepared victim impact evidence in order to prevent impermissible considerations by the sentencing body. *See, e.g.*, *Ball*, 347 Md. at 197–98. The list provided under CP § 11-402(e) is a proper restriction on prepared victim impact evidence content because this still allows victims to present evidence in a variety of forms to convey the identity of the victim as well as the impact of the crime on the victim and the victim's family. *See* CP § 11-402(e)(1) & (e)(7).

As such, this Court holds that a sentencing judge has broad discretion to admit and consider victim impact evidence in forms outside of the bounds of victim impact statements and victim impact testimony. We further hold that all prepared victim impact evidence submitted at sentencing, including victim impact videos, needs to meet at least one of the very broad content requirements listed under CP § 11-402(e). Limiting any prepared victim impact evidence to matters deemed probative by the legislature will prevent sentencing bodies from undertaking impermissible considerations. *See Reid*, 302 Md. at 820. This holding, however, specifically does not apply to victim impact witnesses testifying at the sentencing hearing because testimony is not prepared before sentencing.

25

*Ball*, 347 Md. at 197. Moreover, the holding we make today does not prevent or discourage sentencing judges from considering whether victim impact evidence is cumulative, whether the probative value is outweighed by the danger of unfair prejudice, or whether the admission of victim impact evidence would be so unduly prejudicial that it would violate the defendant's due process rights. *See Whittlesey*, 340 Md. at 87 (analyzing whether victim impact evidence was cumulative); *Evans v. State*, 333 Md. 660, 688 (1994) (determining whether victim impact evidence was so unduly inflammatory that it violated a defendant's due process rights).

Given that our holding here involves interpreting statutes, we review the sentencing judge's decision to admit the victim impact video *de novo*. *See Ball v. State*, 347 Md. at 197. In doing so, this Court declines to separately evaluate elements of the video or specific photographs in the montage when applying this holding to the victim impact video submitted by Mr. McQuain as the victims' representative, as Mr. Lopez requests. *See Whittlesey*, 340 Md. at 69. Instead, we review the victim impact evidence in its entirety to decide if the video conveys information deemed probative by the legislature, just as a sentencing judge would consider the entire video before admitting such evidence. Upon a review of the video submitted by Mr. McQuain, we conclude that this piece of victim impact evidence clearly identified both of the victims for the sentencing judge. *See* CP § 11-402(e)(1). The six-minute-and-twelve-second video portrayed 115 photographs of the two victims, including photos of the individual victims and the victims as a family. The video depicted the victims throughout various stages of their lives, engaging in activities, as well as spending time together as a mother and son. The identity of the victims is one

26

of the permissible contents listed under CP § 11-402(e)(1), which we have adopted and applied to all prepared victim impact evidence.  As such, we conclude that the video played at Mr. Lopez's sentencing hearing satisfied the content restrictions under the adopted statute.  Therefore, we conclude that the sentencing judge did not err as a matter of law in admitting this video at the sentencing hearing.  Moreover, we determine that the judge's decision to admit the victim impact video was not so far "removed from the center mark" because the video was not irrelevant or overly prejudicial; as such, the sentencing judge did not abuse her discretion.  *See Sumpter*, 436 Md. at 85.

## B.      *The Extent of the Eighth Amendment's Application to Victim Impact Evidence*

In his second argument, Mr. Lopez contends that admitting the victim impact video at his sentencing hearing violated his Eighth Amendment right against cruel and unusual punishment.  In analyzing this second contention, this Court will make an independent constitutional appraisal.  *See Riddick v. State*, 319 Md. 180, 183 (1990) ("When the question is whether a constitutional right, such as the one here, has been violated, we make our own independent constitutional appraisal.").  In conducting a constitutional appraisal, we are to review the law and apply the law to the peculiar facts of the particular case.  *In re Tariq A-R-Y*, 347 Md. 484, 489 (1997).  This Court is to undertake this same independent constitutional appraisal when reviewing evidentiary rulings, which are normally left to the discretion of the trial judge.  *See Crosby v. State*, 366 Md. 518, 526 (2001).

The Eighth Amendment to the United States Constitution provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  This Amendment applies to the States as incorporated

by the due process clause of the Fourteenth Amendment. *See Robinson v. California,* 370 U.S. 660, 667 (1962). Mr. Lopez asserts that his Eighth Amendment right to be free from cruel and unusual punishment was violated when the sentencing judge admitted the victim impact video because it introduced an arbitrary factor into the sentencing proceeding. Specifically, Mr. Lopez argues that the video was arbitrary because the sole function of this piece of victim impact evidence was to appeal to the sentencing judge's emotions. The State contends that the Court of Special Appeals properly determined that the Eighth Amendment either does not apply to a noncapital sentencing hearing or was not violated in this case because the video did not contain opinions about the crime, the defendant, or the appropriate sentence. The victims' representative characterizes Mr. Lopez's Eighth Amendment argument as requesting this Court to impose a *per se* bar on any victim impact evidence that contains background music. As such, the victims' representative contends that the Eighth Amendment imposes no bar to victim impact evidence in non-death penalty cases.

The Supreme Court first applied the Eighth Amendment to the admission of victim impact evidence to a sentencing jury at capital sentencing in *Booth v. Maryland*, 482 U.S. 496 (1987), *overruled by Payne v. Tennessee*, 501 U.S. 808 (1991). The Supreme Court "granted certiorari to decide whether the Eighth Amendment prohibits a capital sentencing jury from considering victim impact evidence." *Id.* at 501–02. The Supreme Court determined that the victim impact statement in *Booth* contained two groups of information: first, a description of the victims and the trauma suffered by the family after the crimes; and second, the family's opinions and characterizations of the crimes. 482 U.S. at 503–08.

28

The Supreme Court was concerned with the first type of information included in the victim impact statement because it is not "relevant in the unique circumstance of a capital sentencing hearing" as this "could result in imposing the death sentence because of factors about which the defendant was unaware, and that were irrelevant to the decision to kill." *Id.* at 504–05. The Supreme Court also explained "that it would be difficult—if not impossible—to provide a fair opportunity to rebut such evidence without shifting the focus of the sentencing hearing away from the defendant." *Id.* at 506.

Turning to the second type of information provided in the victim impact statement, the Supreme Court concluded that a family's opinions about a defendant's crimes "can serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant. As we have noted, any decision to impose the death sentence must 'be, and appear to be, based on reason rather than caprice or emotion.'" *Id.* at 508 (quoting *Gardner v. Florida*, 430 U.S. 349, 358 (1977)). Therefore, the Supreme Court in *Booth v. Maryland* was extremely concerned about admitting a victim impact statement that included these two categories of information to a capital sentencing jury. *See id.* at 503–09. However, the Supreme Court specifically held "that the introduction of a [victim impact statement] at the sentencing phase of a capital murder trial violates the Eighth Amendment," which effectively created a *per se* ban on victim impact statements in death penalty cases. *Id.* at 509.

The Supreme Court revisited the interaction between victim impact evidence at a capital sentencing and the protections of the Eighth Amendment in *Payne v. Tennessee*, 501 U.S. 808 (1991). The specific task for the Supreme Court in *Payne* was "to reconsider"

29

whether "the Eighth Amendment prohibits a capital sentencing jury from considering 'victim impact' evidence relating to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family." *Id.* at 817. Payne asserted that victim impact testimony about a child missing his murdered mother and sister and the State's reiteration of that testimony in its closing argument at capital sentencing resulted in a violation of his Eighth Amendment rights. *Id.* at 816. In its analysis, the Supreme Court first summarized the prior opinion, stating:

> *Booth* [was] based on two premises: that evidence relating to a particular victim or to the harm that a capital defendant causes a victim's family do not in general reflect on the defendant's 'blameworthiness,' and that only evidence relating to 'blameworthiness' is relevant to the capital sentencing decision. However, the assessment of harm caused by the defendant as a result of the crime charged has understandably been an important concern of the criminal law[.]

*Id.* at 819. In disagreeing with its previous jurisprudence, the *Payne* Court recognized that victim impact evidence serves legitimate purposes at capital sentencing proceedings, such as showing "*each* victim's 'uniqueness as an individual human being,'" and "the harm done by the defendant[.]" *Id.* at 823, 825. As such, the Supreme Court overruled *Booth*, but in doing so the *Payne* decision adopted a very narrow holding:

> We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

*Id.* at 827.

In 2016, the Supreme Court again considered the appropriateness of victim impact evidence at a sentencing proceeding given the right against cruel and unusual punishment. Specifically, the Supreme Court issued a *per curiam* opinion in *Bosse v. Oklahoma*, deciding whether the State's request for the victim's family to recommend a sentence at a capital proceeding violated the Eighth Amendment. 137 S.Ct. 1 (2016). The *per curiam* Court first clarified that *Booth* stood for the proposition that the Eighth Amendment prohibits a capital sentencing jury from considering any victim impact evidence outside of circumstances of the crime. *Id.* at 1. The Court further explained that *Payne* overruled only *Booth*'s ban of victim impact evidence concerning the characteristics of the victim and the impact of the crime on the victim's family at capital sentencing; *Payne* did not overrule *Booth*'s prohibition of victim impact evidence regarding the family's characterizations and opinions of the crime. *Id.* at 1–2. Ultimately, the *Bosse* Court concluded that the states "remain[] bound by *Booth*'s prohibition on characterizations and opinions from a victim's family members about the crime, the defendant, and the appropriate sentence unless this Court reconsiders that ban." *Id.* at 2.

As Mr. Lopez acknowledges, none of these three key Supreme Court precedents regarding victim impact evidence examine whether the restriction against cruel and unusual punishment prohibits such evidence in *noncapital* cases. Instead, each of the opinions examined above specifically tailored its analysis to whether a sentencing jury should consider victim impact evidence in deciding whether to impose the death penalty. For example, the initial discussion of a defendant's Eighth Amendment rights as related to

31

victim impact evidence in *Booth* began with the recognition that "the *death sentence* must be 'suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.'" 482 U.S. at 502 (emphasis added). The holding in *Booth* was equally limited: "We conclude that the introduction of a [victim impact statement] at the sentencing phase of a *capital murder trial* violates the Eighth Amendment." *Id.* at 509 (emphasis added). The focus on the death penalty continued in *Payne*, in which the Supreme Court reviewed another issue regarding victim impact evidence presented at a capital sentencing. 501 U.S. at 827.

In addition, these cases all analyze whether showing a sentencing jury victim impact evidence violates a defendant's Eighth Amendment rights. The original discussion of victim impact evidence under the Eighth Amendment in *Booth* recognized that "the question presented is *whether the Constitution prohibits a jury from considering* a victim impact statement." 482 U.S. at 502 (emphasis added) (cleaned up).[13] Similarly, the *Payne* Court included key language that "[a] State may legitimately conclude that evidence about

---

[13] Both this Court and the Court of Special Appeals have recently used the parenthetical "cleaned up" as a way to simplify quotations. *See Lamalfa v. Hearn*, ___ Md. ___, ___, No. 39, Sept. Term, 2017, 2018 WL 679687, at *10 (Feb. 2, 2018); *Chassels v. Krepps*, 235 Md. App. 1, 10 (2017). Specifically, we noted that this parenthetical "signals that the current author has sought to improve readability by removing extraneous, non-substantive clutter (such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization) without altering the substance of the quotation." *Chassels*, 235 Md. App. at 10 (citing Jack Metzler, *Cleaning Up Quotations*, J. APP. PRAC. & PROCESS (forthcoming 2018)).

the victim and about the impact of the murder on the victim's family is relevant to the *jury's decision as to whether or not the death penalty should be imposed*" because the "Eighth Amendment erects no *per se* bar." 501 U.S. at 827 (emphasis added). As is evident by the express language, the analyses in *Booth*, *Payne*, and *Bosse* address whether victim impact evidence "leads to the arbitrary imposition of the death penalty," thereby violating the Eighth Amendment. *Payne*, 501 U.S. at 825. Moreover, the Supreme Court considers specifically whether showing victim impact evidence to a sentencing jury, as opposed to a sentencing judge, violates a defendant's Eighth Amendment rights. Therefore, these Supreme Court precedents are not dispositive to our analysis of whether victim impact evidence violates a noncapital defendant's Eighth Amendment right to be free from cruel and unusual punishment.

Mr. Lopez did not cite to any case law, and this Court has found none, that involve a noncapital defendant successfully arguing that the presentation of victim impact evidence to a sentencing judge violated his rights under the Eighth Amendment. Therefore, it becomes significant that the issue before us is distinct from the questions addressed in *Booth* and *Payne*. In Mr. Lopez's case, there was no possibility that the sentencing judge could arbitrarily impose the death penalty. The State in this case sought only a sentence of life imprisonment without parole. As this Court made clear in *Woods v. State*: "We do not agree with the notion that a life sentence without the possibility of parole is, even relatively, the equivalent of death itself. The death penalty cases cited by [the Petitioner] to support this view are simply inapposite." 315 Md. 591, 606–07 (1989). Therefore, we conclude

33

that a review of victim impact evidence presented at noncapital proceedings is another instance in which the death penalty cases are inapposite. *Id.*

After conducting our independent constitutional appraisal, we find that there is no legal support for the proposition that the Eighth Amendment's protection extends to claims that victim impact evidence presented at noncapital sentencing proceedings injected an arbitrary factor into the sentencing decision. We hold that a noncapital defendant's Eighth Amendment right against cruel and unusual punishment is not violated when victim impact evidence is introduced at sentencing. As Mr. Lopez is inarguably a noncapital defendant, we conclude that Mr. Lopez's Eighth Amendment rights were not violated when the sentencing court admitted the victim impact video at his sentencing hearing.

## C. Victim Impact Videos under the Fourteenth Amendment

Mr. Lopez's third and final contention is that admitting the victim impact video at his sentencing hearing violated his Fourteenth Amendment due process rights. As this is another question of whether a constitutional right was violated, we will make a constitutional appraisal by independently reviewing the law and applying the law to the facts of the case. *See Riddick*, 319 Md. at 183; *Crosby*, 366 Md. at 526. Mr. Lopez specifically asserts that the video is so unduly prejudicial that it rendered the sentencing proceeding fundamentally unfair because the video served the sole purpose of eliciting emotions from its viewers. In response, the State contends that the Court of Special Appeals was correct in holding that the victim impact video was not so unduly prejudicial for two reasons: the sentencing body in this case was a judge as opposed to a jury; and, the video was not lengthy or highly emotional. The victims' representative emphasizes that

34

the victim impact video served the legitimate purpose of showing the sentencing judge the victims' personal characteristics, which inherently and necessarily has an emotional impact.

As the parties and the Court of Special Appeals correctly observed, the Supreme Court held that defendants have an alternative recourse under the Fourteenth Amendment when victim impact evidence is presented at sentencing. *Payne*, 501 U.S. at 825. Specifically, the Supreme Court held: "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Id.* The majority opinion in *Payne* did not articulate the appropriate test in determining when victim impact evidence is "so unduly prejudicial" that it violates due process. However, Justice Sandra Day O'Connor provided a more detailed analysis of victim impact evidence under the Fourteenth Amendment in her concurring opinion. Justice O'Connor specifically addressed whether the victim impact evidence at issue in *Payne* "so infects the sentencing proceeding as to render it fundamentally unfair[.]" *Id.* at 831 (O'Connor, J., concurring). In doing so, the concurring opinion reasoned that the "line was not crossed in this case" because the victim impact evidence "did not inflame [the sentencing jury's] passions more than did the facts of the crime[.]" *Id.* at 832 (O'Connor, J., concurring). Despite concluding that the victim impact testimony did not deprive the defendant of due process, Justice O'Connor noted that she does "not doubt that the jurors were moved by this testimony—who would not have been?" *Id.* Therefore, Justice O'Connor explained that victim impact evidence presented at sentencing, though moving, is not a violation of due

35

process when such evidence does not inflame the passions of the sentencing jury more than the facts of the crime. *See id.*

This Court subsequently adopted the standard that Justice O'Connor enunciated in her concurring opinion. *See Evans*, 333 Md. at 688. In *Evans*, the defendant, Vernon Lee Evans, Jr. ("Evans"), was hired to kill a husband and wife in exchange for $9000.00. *Id.* at 666. Evans rented a room for two nights at the hotel where the husband and wife were employed. *Id.* Instead of working with her husband at the hotel as planned, the intended victim asked her sister to substitute for her at the front desk. *Id.* After observing a male and female at the front desk of the hotel, Evans killed the husband and his sister-in-law. *Id.* Evans was subsequently convicted of two counts of first degree murder. *Id.* At the capital sentencing proceeding, the State presented to the jury a presentence investigation report with attached victim impact statements as well as live testimony from the intended victim, Cheryl Piechowicz ("Piechowicz"), the wife and sister of the deceased. *Id.* at 684. Evans argued that Piechowicz's statements in her victim impact testimony about her coping with guilt from her sister's death when she was the intended target as well as her grief seeing the impact that the crime had on her five-year-old daughter were so inflammatory that their admission violated his Fourteenth Amendment rights. *Id.* at 689. In analyzing the issue, the *Evans* Court first acknowledged that the standard for unduly prejudicial was not fully developed in *Payne*. *Id.* at 688. Instead, the *Evans* Court relied heavily on the guidance in Justice O'Connor's concurring opinion in *Payne*. This Court reasoned that the statements did not violate the defendant's due process rights under the Fourteenth Amendment:

> Like Justice O'Connor in *Payne,* we cannot conclude that these brief statements inflamed the passion of the jury more than did the facts of the crime. Here, the jury had been presented with evidence that Evans carefully planned his crime, patiently waited in the lobby of the hotel for his opportunity, calmly fired nineteen bullets with a MAC-11 machine pistol at Scott Piechowicz and Susan Kennedy, and used the proceeds of his crime to go shopping at a mall with his girlfriend later that evening. The jury had also been presented with the autopsy reports and photographs of Scott Piechowicz, depicting six gunshot wounds to the abdomen, and of Susan Kennedy, depicting four gunshot wounds to the chest. In light of the jury's extensive knowledge about the facts of these murders, we cannot say that the jury's additional knowledge about Cheryl Piechowicz's natural feelings of grief and guilt or about a young child's understandable trauma concerning the loss of her father deprived Evans of due process.

*Id.* at 689. By adopting the reasoning in Justice O'Connor's concurrence, this Court concluded that victim impact evidence violates the Fourteenth Amendment Due Process Clause when it is so "inflammatory" that it inflames the sentencing body more than the facts of the crime. *Id.*

This Court recognizes that *Payne* and *Evans* analyzed whether providing *capital sentencing juries* with certain victim impact evidence was unconstitutional. In this case, Mr. Lopez, a noncapital defendant, was sentenced by a judge. Indeed, this Court has previously stressed that Maryland law is "somewhat more restrictive as to the admissibility of evidence at the sentencing proceedings of death penalty cases than is normally the case in a sentencing proceeding in a nondeath penalty case." *Johnson v. State,* 303 Md. 487, 525 (1985), *cert. denied*, 474 U.S. 1093 (1986). However, this Court has also held that "[w]hile a sentencing judge's inquiry is not limited by the strict rules of evidence . . . the judge may not consider evidence which possesses such a low degree of reliability that it

37

raises a substantial possibility that his judgment may be influenced by inaccurate or false information." *Henry v. State*, 273 Md. 131, 147 (1974). Moreover, Maryland appellate courts have previously analyzed whether a sentencing judge has been improperly influenced by certain evidence in devising a sentence. *See, e.g.*, *Tibbs v. State*, 72 Md. App. 239, 259 (1987); *Hurley v. State*, 60 Md. App. 539, 564 (1984) ("We do not find in Judge Sanders' comments anything which indicates an improper consideration in determining the sentence."). Specifically, in *Tibbs*, the Court of Special Appeals determined that while a sentencing judge "may properly consider the impact a crime has had upon its victims before passing on the defendant's sentence," the appellate courts must determine whether there is anything "in the record from which we can conclude that the judge was improperly influenced by [victim impact evidence]." 72 Md. App. at 259. In that case, the Court of Special Appeals determined that the sentences fell within statutory limits and did "not appear to have been dictated by *passion*, ill will, or other unworthy motive." *Id.* (Emphasis added).

Even Justice O'Connor in her concurring opinion in *Payne* recognized that in some states, a sentencing judge, as opposed to a jury, considers victim impact evidence and renders a sentence. Specifically, Justice O'Connor emphasized:

> Most States have enacted legislation enabling *judges and juries* to consider victim impact evidence. The possibility that this evidence may in some cases be unduly inflammatory does not justify a prophylactic, constitutionally based rule that this evidence may never be admitted. Trial courts routinely exclude evidence that is unduly inflammatory; where inflammatory evidence is improperly admitted, appellate courts carefully review the record to determine whether the error was prejudicial.

38

*Payne*, 501 U.S. at 831 (O'Connor, J., concurring) (emphasis added).

As such, we are persuaded that a noncapital sentencing hearing could be rendered "fundamentally unfair" when the victim impact evidence inflames the passion of the sentencing judge more than the facts of the crime. *Payne*, 501 U.S. at 825. Our support for this holding is twofold: (1) Maryland appellate courts routinely analyze whether sentencing judges were improperly influenced by certain evidence; and (2) Justice O'Connor stated that appellate review is still necessary to determine if the admission of inflammatory evidence was prejudicial error even after recognizing that sentencing judges are often the body considering victim impact evidence and rendering sentences. *See, e.g.*, *Tibbs v. State*, 72 Md. App. 239, 259 (1987); *Hurley v. State*, 60 Md. App. 539, 564 (1984); *Payne*, 501 U.S. at 831 (O'Connor, J., concurring). As such, we will also apply Justice O'Connor's test to determine whether showing victim impact evidence to a sentencing judge violated a noncapital defendant's due process rights. In the instant case, we apply this test to analyze whether admitting the victim impact video during the sentencing hearing violated Mr. Lopez's rights under the Fourteenth Amendment.

At Mr. Lopez's sentencing hearing, the State first indicated to the court that it intended to "present a slide show or PowerPoint that shows some of the history of the defendant along with the victims in this case. I've already told people here, but there's going to be some very difficult pictures presented. This is a very horrific crime and some of these pictures that are going to be shown are going to be such." (Cleaned up). After briefly introducing the victims and the defendant's criminal history with the supporting PowerPoint, the State presented a synopsis of the facts of the case. Specifically, the State

summarized that "the defendant planned to murder Jane and William McQuain before he even traveled to Maryland. He came and he stayed in Maryland with them for two weeks, knowing the entire time that he planned to kill them." Detailing each movement the defendant took in planning the murders, the State ultimately discussed how the defendant murdered Jane McQuain.

> At some point during the middle of the night and the early morning hours of October 1st, 2011, the defendant murdered Jane McQuain in her bed. The photographs we're going to present are from the crime scene. The defendant used a 30-pound metal weight, which you can see in this picture, your honor, to your right that he brought from North Carolina. . . .

> The defendant takes that 30-pound weight, he sneaks up on Jane McQuain while she's lying in her bed, he smashed the weight into the back of her head at least two times. Jane was suffering from massive head trauma but was still alive. The defendant threw extra blankets over Jane at that point. The defendant then went and got a large butcher knife. He stabbed Jane through all three comforters, twice in her back. One of those puncture wounds injured her rib and punctured her lung.

> This is how officers found Jane McQuain when they broke into her house on October 12th. The defendant had stabbed Jane McQuain so hard that the knife was actually bent.

The sentencing judge, therefore, heard the gruesome description of the murder of Jane as she slept and saw pictures of the murder victim as the police found her, beaten and stabbed.

> The State continued to describe the method in which the defendant murdered his second victim, William.

> The defendant waited around the entire morning to pick up William after he went to the bank. He drove around with William for hours, from 9:30 until 1:30 p.m., hours, knowing what he was going to do, just looking for a place to murder William and dump his body. The defendant continues

40

making phone calls throughout that time to his girlfriend. The only time there's no phone use from the defendant is 1:30 to 1:51 p.m. when he was murdering William McQuain. That's a shot of where the Liberty gas station is and where William's body was later found.

These photos are also graphic from the crime scene. When William was found on October 18th, this is how William was found: with some debris covering him; once the debris is removed; the baseball bat that was found feet away from William McQuain's body.

The defendant struck William McQuain at least four times in the head, shattering his skull into pieces, 36 pieces to be exact.

* * *

Jane and William McQuain loved and trusted the defendant, and he used that love and trust to murder both of them.

While recounting the horrific details of how the defendant murdered William, the State showed the sentencing judge pictures of the young victim's body left in the woods. After the State described and showed the crimes in detail, the State asked the court to hear testimony from various friends and family of the murder victims. Mr. McQuain, the victims' representative and Jane's brother, testified last, after which he asked the court to view the victim impact video. As such, the sentencing court heard the detailed facts of the murders before viewing the video.

This Court does not deny that the victim impact video is capable of evoking emotions. However, we conclude that the video did not inflame the passions of the sentencing judge more than the facts of the crime. *See Payne*, 501 U.S. at 832. The sentencing judge in this case was presented detailed evidence about the methods the defendant employed in killing his wife and her son. The sentencing judge heard evidence

41

that the defendant used a thirty-pound metal weight to smash into his wife's head while she was sleeping and then continued to stab her twice in order to ensure that she was dead. The State also emphasized how the defendant struck William's head with a baseball bat four times, splitting his skull into thirty-six pieces. Significantly, the State described these horrible murders while showing the sentencing judge gruesome pictures of the crime scene, depicting the victims just after they were murdered. Additionally, the sentencing judge heard again and again how Mr. Lopez manipulated his wife and a boy who called him "Dad" in order to murder them and steal their possessions. The facts of this crime are irrefutably shocking, horrific, and emotional. Applying the standard announced by Justice O'Connor's concurring opinion in *Payne*, we conclude that the victim impact video, displaying the victims as they lived, did not inflame the passion of the sentencing judge more than the facts of the crime. 501 U.S. at 832 (O'Connor, J., concurring); *see also Evans*, 333 Md. at 688–89. Therefore, we hold that admitting the victim impact video at the sentencing proceeding did not violate Mr. Lopez's Fourteenth Amendment due process rights.

## CONCLUSION

The parameters of victim impact statements and victim impact testimony at sentencing proceedings are governed by CP § 11-402 and § 11-403. However, we hold today that judges have discretion to admit any form of victim impact evidence, beyond statements and testimony, at sentencing hearings. We further hold that all prepared victim impact evidence, regardless of form, is required to convey at least one of the types of contents enumerated under CP § 11-402(e). This limitation in content does not, however,

42

apply to victim impact testimony due to the emotional and spontaneous nature of live testimony. *See Ball*, 347 Md. at 197. In this case, we conclude that the sentencing judge did not err in admitting the victim impact video for two reasons: first, judges have discretion to admit any form of victim impact evidence beyond CP § 11-402 and § 11-403 at sentencing hearings; and second, the video in question identified the victims, which is one of the permissible contents under CP § 11-402(e)(1).

We also hold that a defendant's Eighth Amendment right against cruel and unusual punishment is not violated when victim impact evidence is presented at a noncapital sentencing proceeding. As the State requested a sentence of life imprisonment without parole, Mr. Lopez is not a capital defendant. As such, Mr. Lopez's Eighth Amendment rights were not violated when the sentencing judge admitted the victim impact video at the sentencing proceeding. Finally, in applying Justice O'Connor's test from her concurring opinion in *Payne*, we conclude that the victim impact video did not inflame the passions of the sentencing judge more so than the facts of the crime. As such, we hold that showing the video at the sentencing hearing did not violate Mr. Lopez's rights under the Fourteenth Amendment Due Process Clause. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**